984 So.2d 1227 (2008)
Robert Sheldon PETERS, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-341.
Supreme Court of Florida.
May 1, 2008.
Rehearing Denied June 18, 2008.
Nancy A. Daniels, Public Defender, and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Bill McCollum, Attorney General, Robert R. Wheeler, Assistant Attorney General, Bureau Chief, and Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, FL, for Respondent.
QUINCE, J.
We have for review a decision of the First District Court of Appeal in Peters v. State, 919 So.2d 624, 628 (Fla. 1st DCA 2006), on the following question certified to be of great public importance:
DOES THE "TESTIMONIAL HEARSAY" RULE SET FORTH IN CRAWFORD V. WASHINGTON, 541 U.S. 36[, 124 S.Ct. 1354, 158 L.Ed.2d 177] (2004) APPLY IN COMMUNITY CONTROL AND/OR PROBATION REVOCATION PROCEEDINGS?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we hold that the rule set forth in Crawford, which provides that testimonial hearsay is inadmissible in a criminal prosecution unless the declarant is unavailable and the accused has had an opportunity to cross-examine the witness, does not apply to probation or community control revocation proceedings in Florida.

FACTUAL AND PROCEDURAL HISTORY
Robert Sheldon Peters, already on probation in August 2000, entered a plea of nolo contendere to new charges of criminal *1228 mischief, assault, and escape. The trial court adjudicated him guilty of escape, withheld imposition of sentence, and placed him on probation, merging the previous probations into a new three-year probationary period. In January 2003, Peters' probation officer filed an affidavit of violation of probation, alleging use of marijuana and failure to follow instructions by refusing to submit a urine sample. Peters pled nolo contendere, and the court modified his probation in May 2003 by ordering him to serve twelve months of community control. By June 2003, Peters' probation officer filed a new notice of violation, alleging that Peters tested positive for amphetamines on two separate dates. In July 2003, the court revoked the prior community control, sentenced Peters to twenty-four months in the Department of Corrections (suspended), and again ordered him to serve twelve months of community control under the original terms and conditions.
Pursuant to the terms of his supervision, Peters was required to submit urine samples to be tested for the presence of illegal narcotics. His April 2004 sample was sent to PharmChem, an independent laboratory used by the Department of Corrections. The lab report indicated that the sample was positive for amphetamines and methamphetamines, and the result was confirmed by PharmChem in a second testing. The State submitted the urinalysis report at a new revocation hearing in June 2004, along with a "Certification and/or Declaration of the Report as a Business Record Pursuant to 90.803(6), Fla. Evid.Code," which was signed by the corporate records custodian and notarized. No one from the laboratory testified at the hearing. Defense counsel objected to the report, arguing that the proceeding was a trial and that admission of the report violated Peters' right to confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Defense counsel also objected on the ground that under Monroe v. State, 679 So.2d 50 (Fla. 1st DCA 1996), and Williams v. State, 553 So.2d 365 (Fla. 5th DCA 1989), the report constituted hearsay, which cannot form the sole basis for finding a violation of community supervision. In turn, the State argued that the report was admissible as a business record. The circuit court found Peters guilty of the violation, revoked community control, and sentenced him to twenty-four months of incarceration. The First District affirmed and held that the rule in Crawford does not apply to community supervision revocation proceedings. Peters v. State, 919 So.2d 624 (Fla. 1st DCA 2006).

DISCUSSION
Peters primarily contends that he is entitled to confront and cross-examine the witnesses against him because the PharmChem lab report is considered testimonial hearsay under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). He contends that because Florida probation revocation proceedings constitute "criminal prosecutions" within the meaning of the Sixth Amendment, they are sufficiently analogous to trials that his Confrontation Clause rights are prescribed by Crawford. Peters also argues that he was denied due process of law because he was prevented from confronting and cross-examining anyone from PharmChem.[1]

*1229 Sixth Amendment Right of Confrontation and Revocation Proceedings
In Crawford, the United States Supreme Court held an out-of-court testimonial statement of an unavailable declarant is not admissible at a criminal trial unless the defendant had a prior opportunity to cross-examine the declarant. If these requirements are not satisfied, the Confrontation Clause requires exclusion of the evidence. The Crawford decision applies specifically to the use of testimonial statements during a criminal prosecution. The Crawford Court did not establish a precise definition of testimonial but said at a minimum testimonial statements would include prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations. This pronouncement was clarified somewhat in Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), a case centering upon an exchange between a victim/witness and a 911 operator. In Davis, the Court said:
Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively demonstrate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.
Id. at 822, 126 S.Ct. 2266.
In the instant case, the district court found the lab report testimonial under the Crawford formulation. However, this Court need not address whether the specific laboratory report relied upon in Peters' revocation hearing was testimonial, because the issue presented by the certified question is really whether a revocation proceeding is a criminal prosecution as that term is used in Crawford. We find that revocation of probation or community control proceedings are not criminal prosecutions and that Crawford does not apply to revocation proceedings.
In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court began its opinion with the proposition that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." 408 U.S. at 480, 92 S.Ct. 2593 (citing Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)). The Court emphasized that its decision was not an attempt "to equate [a revocation hearing] to a criminal prosecution in any sense." Id. at 489, 92 S.Ct. 2593. A year later, the Supreme Court extended that holding to probation revocation proceedings. See Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty."). The overwhelming majority of state and federal courts that have considered Crawford have decisively concluded that Crawford concerns only Sixth Amendment confrontation rights in criminal prosecutions and that parole or probation revocation proceedings are not criminal prosecutions within the meaning of the Sixth Amendment.[2]
*1230 Peters, however, contends that probation revocation proceedings in Florida are judicial, adversarial inquiries that are more akin to a criminal prosecution within the meaning of the Sixth Amendment than the informal revocation proceedings considered by the U.S. Supreme Court in Morrissey and Scarpelli. These cases both distinguished between informal revocation proceedings, in which the state is represented by the parole or probation officer, and the formal adversarial nature of criminal prosecutions, where the state is represented by a prosecutor. Peters notes that in Florida revocation proceedings, a prosecutor rather than a probation officer represents the state, and a judge rather than an informal panel of hearing officers determines whether to revoke probation. However, Scarpelli makes a distinction between the two types of proceedings in order to resolve the narrow issue of whether a probationer had an absolute right to counsel at a probation hearing. 411 U.S. at 783, 93 S.Ct. 1756. Notably, Peters does not allege a violation of his right to counsel, but a violation of his right to confront and cross-examine an adverse witness.
Peters also argues that a probation revocation hearing is a criminal prosecution because prosecution terminates only with sentencing and a revocation hearing is a deferred sentencing. See Green v. State, 463 So.2d 1139, 1140 (Fla.1985) (referring to the revocation process as deferred sentencing). He contends that the term "prosecution" encompasses proceedings following the determination of guilt and in support notes that Florida courts have held that defendants retain certain other constitutional rights at the sentencing stage. See, e.g., Tur v. State, 797 So.2d 4, 6 (Fla. 3d DCA 2001) (holding that the court could not impose a deferred sentence at a revocation hearing without having appointed counsel for the defendant); Santeufemio v. State, 745 So.2d 1002 (Fla. 2d DCA 1999) (holding that a defendant has a *1231 right to be present at a revocation hearing). We reject both arguments.
In Morrissey, the Supreme Court stated that revocation proceedings are not criminal prosecutions but noted, "Parole arises after the end of the criminal prosecution, including imposition of sentence." 408 U.S. at 480, 92 S.Ct. 2593. The Court in Scarpelli observed, "Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." 411 U.S. at 782 n. 3, 93 S.Ct. 1756. In contrast, sentence is often not imposed on a Florida probationer. The Florida Rules of Criminal Procedure provide, "Pronouncement and imposition of sentence of imprisonment shall not be made on a defendant who is to be placed on probation, regardless of whether the defendant has been adjudicated guilty." Fla. R.Crim. P. 3.790(a); see also § 948.01(2) Fla. Stat. (2006). Thus, Peters contends that criminal prosecution continued in his case throughout the probationary period and did not conclude until the court imposed sentence at the conclusion of the revocation hearing.[3] Though probation revocation may constitute a part of the sentencing process, case law supports the proposition that a "criminal prosecution" concludes with the determination of guilt of the crime charged, not with a determination that a later violation of probation has occurred. Cf. Bernhardt v. State, 288 So.2d 490, 498 (Fla.1974) ("Probation revocation is an entirely different stage of the criminal-correctional process." (quoting In re Whitney, 421 F.2d 337, 338 (1st Cir.1970))); see Scarpelli, 411 U.S. at 782, 93 S.Ct. 1756 ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution. . . . ").
Critical to the distinction between a criminal prosecution at trial, during which a defendant enjoys the protections of the Sixth Amendment, and a criminal proceeding such as a revocation hearing is the fact that the accused at trial awaits a determination of guilt or innocence. In Scarpelli, the Supreme Court asserted that it dealt "not with the right of an accused to counsel in a criminal prosecution, but with the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime." Scarpelli, 411 U.S. at 789, 93 S.Ct. 1756 (emphasis added). In Florida, a court may only place on probation a defendant who "has been found guilty by the verdict of a jury, has entered a plea of guilty or a plea of nolo contendere, or has been found guilty by the court trying the case without a jury." § 948.01, Fla. Stat. (2006). Although a court may not impose sentence, i.e., incarceration, at the time it places a defendant on probation and may further choose to withhold adjudication of guilt, the "conviction" of the defendant is concluded prior to the commencement of probation. See Fla. R.Crim. P. 3.790(a).
We stated in an early revocation case that "[t]he purpose of the granting of probation . . . without an actual adjudication of guilt, is rehabilitation of one who has committed the crime charged without formally and judicially branding the individual as a convicted criminal and without the loss of civil rights and other damning consequences." Bernhardt v. State, 288 So.2d 490, 495 (Fla.1974). The imposition of sentence is not withheld in order to ensure the retention of constitutional rights by a party who is presumed innocent; rather, *1232 sentence is withheld solely to aid in the rehabilitation of a party whose guilt has been established. In Bernhardt, we acknowledged that while a defendant is not incarcerated when placed on probation, the defendant is nonetheless serving a type of suspended sentence. This Court, quoting from Brill v. State, 159 Fla. 682, 32 So.2d 607, 608-09 (1947), said:
The major concern of the court at the [revocation] hearing was whether or not appellant had been on good behavior during his suspended sentence. The liberty he was enjoying was by judicial grace, he had already plead [sic] guilty to the offense of selling moonshine liquor. The hearing is in no sense a retrial of the main offense. Having plead [sic] guilty to that, he is now subject to be sentenced as he might have been at the time the suspended sentence was promulgated if he has not observed its conditions. The hearing was to determine this and no more.
Such hearings are informal and do not take the course of a regular trial, neither does the evidence have the same objective as that taken at a regular trial. Its purpose is to satisfy the conscience of the court as to whether the conditions of the suspended sentence have been violated. A secondary purpose is to give the person accused of violating the suspended sentence a chance to explain away the accusation against him, but even this does not contemplate a strict or formal trial.
288 So.2d at 495.
Since Bernhardt, we have continued to acknowledge that while probation is not necessarily a sentence, the criminal prosecution has ended with either a sentence of incarceration or a suspended sentence of probation. See, e.g., Perez v. State, 599 So.2d 1385 (Fla. 3d DCA 1992) (acknowledging probation as a sentence in lieu of immediate imprisonment); McGuirk v. State, 382 So.2d 1235 (Fla. 2d DCA 1980) (acknowledging that a court may suspend all or some of a defendant's sentence in order to place the defendant on probation).
Case law uniformly draws a distinction between the full array of rights due to a defendant before conviction and the limited rights available during sentencing proceedings. "It is well-established . . . that a defendant's rights at sentencing differ considerably from his pre-conviction rights." United States v. Jackson, 453 F.3d 302, 305 (5th Cir.) (affirming denial of defendant's right to present a witness during sentencing to rebut presentence investigation report), cert. denied, ___ U.S. ___, 127 S.Ct. 462, 166 L.Ed.2d 329 (2006); see also United States v. Young, 981 F.2d 180 (5th Cir.1992) ("Concerning the right to confrontation, it is more than well-established that `a defendant's confrontation rights at sentencing are severely restricted.'"); United States v. Satterfield, 743 F.2d 827 (11th Cir.1984) (holding that a noncapital defendant does not have a constitutional right to confront and cross-examine adverse witnesses at sentencing to rebut presentence investigation report). The rights available to the defendant awaiting sentencing are limited because the interest at stake at the sentencing stage is limited. See United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir. 1989) ("It is widely recognized that the sole interest being protected at sentencing is the right not to be sentenced on the basis of inaccurate or unreliable information."); United States v. Espinoza, 481 F.2d 553, 555 (5th Cir.1973) ("What is involved . . . is the right of a defendant to at least minimal safeguards to insure that the sentencing court does not rely on erroneous factual information when assessing sentence.").
*1233 Similarly, the constitutional rights available to a probationer are also limited. Cf. United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (holding that a warrantless search of the probationer's home without probable cause was reasonable under the Fourth Amendment under a lesser standard of reasonable suspicion where the terms of probation included consent to a warrantless search); Minnesota v. Murphy, 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (reiterating that there is no right to a jury trial before probation is revoked); Prellwitz v. Berg, 578 F.2d 190, 192 (7th Cir.1978) (affirming revocation and recognizing that probation revocation hearings are not subject to the full constitutional standards of a criminal trial); Scott v. State, 937 So.2d 746 (Fla. 4th DCA 2006) (holding that the Fifth Amendment prohibition against double jeopardy does not pertain to probation revocation hearings). But see State v. Scarlet, 800 So.2d 220 (Fla.2001) (holding that in the absence of a controlling federal decision, the exclusionary rule applies to illegally seized evidence in Florida probation revocation hearings).
Because a probationer has already been found guilty of the crime charged before being placed on probation or under community supervision, the revocation proceeding implicates only a limited, conditional liberty interest rather than the absolute liberty interest enjoyed by a criminal defendant prior to trial. Therefore, a revocation proceeding cannot be equated to a criminal prosecution for Sixth Amendment Confrontation Clause purposes. Because Crawford addresses the use of testimonial hearsay only in the context of criminal prosecutions, the decision does not apply to Florida revocation proceedings.

Due Process Right in Revocation Proceedings
Peters also argues that even if this Court finds that he does not have a right to confront and cross-examine adverse testimony or evidence under the Sixth Amendment, he still has a due process right to confront and cross-examine evidence against him pursuant to the Due Process Clause of the Fourteenth Amendment. In Morrissey, the U.S. Supreme Court also addressed and rejected the argument that parolees had no due process rights. The Court specifically found that parolees are entitled to:
(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
408 U.S. at 489, 92 S.Ct. 2593; see also Black v. Romano, 471 U.S. 606, 610, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation."); Moody v. Daggett, 429 U.S. 78, 85-86, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) ("In Morrissey, we held that the conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards."). After *1234 outlining these minimum requirements of due process, the Supreme Court also said, "We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S.Ct. 2593.
The Supreme Court, however, described a limited right where it held that due process requires that a parolee have the right to confront and cross-examine adverse witnesses "unless the hearing officer specifically finds good cause for not allowing the confrontation." Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. Other courts have more directly stated the limitation. See United States v. Satterfield, 743 F.2d 827 (11th Cir.1984) (holding that a noncapital defendant does not have a constitutional right to confront and cross-examine adverse witnesses at sentencing to rebut information in a presentence report); Ryan v. Montana, 580 F.2d 988 (9th Cir. 1978) (holding that the right to confront and cross-examine adverse witnesses is not absolute in a combined probation revocation and deferred sentencing proceeding); Young v. United States, 863 A.2d 804, 808 (D.C.2004) (holding that the probationer holds a "qualified" due process right to confrontation); see also Baber v. State, 775 So.2d 258, 260 (Fla.2000) ("Federal and Florida courts have recognized, however, that the right to confront one's accusers is not absolute.").[4]
The Supreme Court emphasized that the revocation process must be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488, 92 S.Ct. 2593; see also United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989) ("While hearsay evidence may be considered at sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability."). "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Morrissey, 408 U.S. at 484, 92 S.Ct. 2593. Acknowledging these due process requirements, this Court stated, "[T]he evidence upon which to predicate a revocation introduced at the hearing must be sufficient to satisfy the conscience of the court that a condition of probation has been violated." Bernhardt, 288 So.2d at 495.
We do not interpret the Crawford decision as changing these standards in regard to revocation hearings. The court in Crawford specifically limited its holdings *1235 to testimonial hearsay in the context of a criminal prosecution under the Sixth Amendment Confrontation Clause. We will not extend the holding in Crawford beyond the bounds outlined by the United States Supreme Court.

Conclusion
For the foregoing reasons, we answer the certified question in the negative and hold that Crawford does not apply to revocation proceedings in the State of Florida. We approve the decision of the First District Court of Appeal.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion.
ANSTEAD, J., dissenting.
In a single proceeding, the trial court revoked Peters' community control and sentenced him to two years in prison. This Court has held that community control and probation revocation proceedings are deferred sentencing proceedings. We have also held that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), applies to sentencing proceedings. Hence, I cannot agree with the majority's holding that Crawford should not be applied in probation revocation proceedings.
The majority opinion relies on the United States Supreme Court's opinions in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), in concluding that parole revocation and probation revocation are essentially identical and that neither is a criminal prosecution to which the Sixth Amendment right of confrontation applies. However, while I can agree with the majority's conclusions as to parole proceedings, it is apparent that under Florida law probation revocation proceedings are not identical to administrative parole revocation proceedings. In fact, this Court has consistently held that probation revocation proceedings are more akin to sentencing proceedings, and as a consequence, we have held that numerous constitutional protections must be extended to such proceedings. We should not ignore our prior law in considering the Crawford issue.

Morrissey
In Morrissey, the United States Supreme Court held that the liberty of a parolee is an interest entitled to only limited protection under the Due Process Clause of the Fourteenth Amendment, since a parolee has already been tried, convicted, and sentenced under the full panoply of rights accorded a criminal accused under the Constitution. 408 U.S. at 480-82, 92 S.Ct. 2593. The Court held that the termination of the privilege of parole requires only an informal hearing. Id. at 482-84, 92 S.Ct. 2593. The Court reasoned that "[p]arole arises after the end of the criminal prosecution, including imposition of sentence." Id. at 480, 92 S.Ct. 2593. The Court further observed that "[t]he granting and revocation of parole are matters traditionally handled by administrative officers." Id. at 486, 92 S.Ct. 2593. The Court further identified two stages in the typical process of parole revocation: a preliminary hearing and a revocation hearing. Id. at 485, 487, 92 S.Ct. 2593. The Court outlined the minimum requirements of due process for the revocation hearing:
(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; *1236 (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
Id. at 489, 92 S.Ct. 2593. The Court held that revocation proceedings mandated only minimum requirements of due process and emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. The Court asserted that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Id. at 480, 92 S.Ct. 2593.[5]

Parole in Florida
As a whole, parole revocation procedures in Florida largely parallel the parole proceedings contemplated by the United States Supreme Court in Morrissey. In fact, the parole revocation statute appears to codify the minimum due process requirements outlined in Morrissey. Compare § 947.23, Fla. Stat. (2003) (outlining parole revocation procedures), with Morrissey, 408 U.S. at 489, 92 S.Ct. 2593 (listing minimum due process requirements for parole revocation hearings).
The granting of parole is a function of the executive branch that is exercised only after the defendant has been convicted and sentenced. Marsh v. Garwood, 65 So.2d 15, 21 (Fla.1953); see also Holston v. Fla. Parole & Probation Comm'n, 394 So.2d 1110, 1111 (Fla. 1st DCA 1981) ("The commission is not, of course, a sentencing court."). Moreover, the authority to grant parole is vested solely in the Parole Commission. Owens v. State, 308 So.2d 171, 171 (Fla. 1st DCA 1975); see also § 947.13(1)(a), Fla. Stat. (2003) (stating that the Parole Commission has the power to determine what persons shall be placed on parole). The Parole Commission administers parole. Floyd v. Parole & Probation Comm'n, 509 So.2d 919, 920 (Fla. 1987). Furthermore, the Parole Commission is responsible for determining whether a person has violated parole and taking action with respect to a violation. § 947.13(1)(c), Fla. Stat. (2003).[6] Accordingly, parole revocation proceedings may be conducted by nonlawyers. See Floyd, 509 So.2d at 920.
Parole revocation proceedings retain other distinctions from criminal trials. A parole revocation hearing "is not a traditional adversary criminal trial, and evidentiary proof is not required to follow strict rules of evidence." Jones v. Fla. Parole & Probation Comm'n, 348 So.2d 681, 682 (Fla. 1st DCA 1977) (citing Singletary v. State, 290 So.2d 116 (Fla. 4th DCA 1974)). Moreover, the exclusionary rule does not *1237 apply in parole revocation hearings. Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 359, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). Further, although the parole revocation statute requires that the parolee be informed of the right to be represented by counsel, § 947.23(4)(b), Fla. Stat. (2003), we have held that counsel does not need to be furnished to indigent parolees in all parole revocation proceedings, Floyd, 509 So.2d at 920. Finally, in lieu of a statutory right to appeal, review of the Parole Commission's orders is available only by petitions for habeas corpus or mandamus filed in the circuit court. Richardson v. Fla. Parole Comm'n, 924 So.2d 908, 910 (Fla. 1st DCA 2006).
In sum, Florida's parole proceedings are virtually identical to those contemplated in Morrissey.

Scarpelli
In Scarpelli, the Court appeared to extend its holding in Morrissey to probation revocation proceedings. Scarpelli, 411 U.S. at 782, 93 S.Ct. 1756. Importantly, however, the Court distinguished its earlier decision in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), in which it had held that a probationer is entitled to the right to counsel at a combined revocation and sentencing hearing. Scarpelli, 411 U.S. at 781, 93 S.Ct. 1756. The Scarpelli Court explained that in Mempa it had reasoned that sentencing, even if it is part of a subsequent probation revocation proceeding, is one of the stages "of a criminal proceeding where substantial rights of a criminal accused may be affected"; therefore, counsel must be provided at sentencing. Scarpelli, 411 U.S. at 781, 93 S.Ct. 1756 (quoting Mempa, 389 U.S. at 134, 88 S.Ct. 254). The Court then declined to extend Mempa's reasoning to the case before it, explaining that "this line of reasoning does not require a hearing or counsel at the time of probation revocation in a case such as the present one, where the probationer was sentenced at the time of trial." Scarpelli, 411 U.S. at 781, 93 S.Ct. 1756 (emphasis supplied). The Court further qualified its holding in explaining its understanding of the nature of the revocation proceeding it was dealing with. The Court explained that "[d]espite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole." Id. at 782 n. 3, 93 S.Ct. 1756 (emphasis supplied). Hence, the Court expressly based its holding on the fact that, unlike the situation in Mempa, where revocation and sentencing took place at the same hearing, sentencing in Scarpelli had been imposed previously.
The Court's holding in Scarpelli was also predicated on the assumption that the probation revocation proceeding being reviewed was an informal administrative proceeding like the parole violation hearing in Morrissey. In holding that the right to counsel for parolees and probationers must be determined on a case-by-case basis, the Court indicated its concern with transforming informal administrative proceedings into full-blown adversary proceedings:
The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hearing body itself, aptly described in Morrissey as being "predictive and discretionary" as well as factfinding, *1238 may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee.
Id. at 787-88, 93 S.Ct. 1756. The Court went on to explain its understanding of the difference between criminal trials and revocation hearings:
In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.
Id. at 789, 93 S.Ct. 1756. In sum, the Court's holding in Scarpelli was expressly based on the assumption that parole and probation revocations were essentially identical administrative proceedings rather than adversarial judicial criminal proceedings. That assumption was critical to the holding in Scarpelli; however, it is clear that the assumption is inconsistent with the way probation revocation proceedings are conducted in Florida.

Probation Revocation and Sentencing in Florida
Some jurisdictions have rejected the application of Scarpelli to probation revocation proceedings because Scarpelli did not contemplate the kind of judicial revocation proceedings conducted in those jurisdictions. See, e.g., Pearl v. State, 996 P.2d 688, 692 (Wyo.2000) (finding that "revocation proceedings in Wyoming are fundamentally different than the administrative process upon which [Scarpelli] is based" and holding that under Wyoming's judicial revocation procedure, the Sixth Amendment requires the appointment of counsel for indigent probationers).
Similarly, in Florida, probation revocation proceedings retain important distinctions not contemplated by the Court in Scarpelli. This Court has emphasized the differences between parole and probation in recognizing that a probationer is entitled to more rights than parolees:
Probation is under the jurisdiction of the courts, and it was in the exercise of our authority over the court system that we determined in Hicks that counsel must be furnished in all probation revocation hearings. Parole is administered by the [Parole] Commission. Moreover, parole revocation proceedings are conducted by nonlawyers. Requiring that counsel be furnished in every case would inevitably lead to the use of counsel by the state. As noted in [Scarpelli], the decision-making process would be prolonged and the financial cost to the state would be substantial. Finally, unlike probation revocation, parole revocation does not lead to a sentencing hearing which necessarily requires the appointment of counsel.
Floyd, 509 So.2d at 920. Unlike the parallel situations for parole and probation contemplated by Scarpelli, probation revocation procedures in Florida possess numerous important characteristics distinguishing them from parole proceedings. In fact, Florida's judicial revocation procedures are more closely akin to the circumstances faced by the Supreme Court in Mempa, where the Court held there was a right to counsel, than those faced by the *1239 Court in Scarpelli, where the Court was careful to distinguish its facts from those in Mempa. In short, probation revocation proceedings in Florida, as in Mempa, are adversarial criminal proceedings that ordinarily contemplate consideration of both revocation and sentencing at a single judicial hearing.
In light of the direct relationship of sentencing to probation revocation proceedings, this Court and others have characterized probation revocation hearings as deferred sentencing proceedings. See Green v. State, 463 So.2d 1139, 1140 (Fla. 1985); Tur v. State, 797 So.2d 4, 6 (Fla. 3d DCA 2001); Santeufemio v. State, 745 So.2d 1002, 1003 (Fla. 2d DCA 1999). Florida law explicitly reflects this characterization: if probation or community control is revoked, the court is required to adjudge the probationer or offender guilty of the offense charged and proven or admitted, unless the probationer or offender has been previously adjudged guilty of the offense, and impose any sentence which it might have originally imposed before placing the defendant on probation or into community control. § 948.06(1), Fla. Stat. (2003);[7]see also Fla. R.Crim. P. 3.790(b)(1). The interrelated nature of probation revocation and sentencing was a direct concern of this Court in State v. Hicks, 478 So.2d 22 (Fla.1985), where, unlike the Court in Scarpelli, we held that counsel must be appointed to probationers in all revocation proceedings: "Further, a probation revocation usually leads to sentencing; an attorney is required at a sentencing proceeding. It seems illogical not to mandate an attorney when revocation is likely to lead to incarceration and to require an attorney only when the length of that incarceration is being decided." Hicks, 478 So.2d at 23 n. *.
While both probation and parole revocation proceedings must adhere to constitutional due process requirements, see Bernhardt v. State, 288 So.2d 490, 498 (Fla. 1974), this Court has consistently recognized they differ in many critical respects. Importantly, for example, probation in Florida is under the jurisdiction of the courts, rather than an administrative agency like the Parole Commission. See Floyd, 509 So.2d at 920. Furthermore, a court may place a defendant on probation either with or without an adjudication of guilt. See § 948.01(1), Fla. Stat. (2003); see also Fla. R.Crim. P. 3.670 ("[W]here allowed by law, the judge may withhold an adjudication of guilt if the judge places the defendant on probation.").[8] Although probation revocation proceedings do not require strict adherence to the formal rules of evidence, see Cuciak v. State, 410 So.2d 916, 918 (Fla.1982), such proceedings provide a defendant with other protections and rights also found in criminal trials. For example, the exclusionary rule applies in probation revocation proceedings. See State v. Scarlet, 800 So.2d 220, 222 (Fla. 2001); State v. Cross, 487 So.2d 1056, 1057-58 (Fla.1986). And, as noted above, a defendant charged with a violation of probation has an absolute right to counsel in revocation proceedings. Hicks, 478 So.2d at 23. While a trial court has broad discretion to revoke probation, Lawson v. State, 969 So.2d 222, 229 (Fla.2007) (citing State ex rel. Roberts v. Cochran, 140 So.2d 597, 599 (Fla. 1962)), and may conduct probation revocation proceedings in an informal manner, the judge may not assume *1240 the role of a prosecutor, Edwards v. State, 807 So.2d 762, 763 (Fla. 2d DCA 2002). As in all criminal prosecutions, the judicial factfinder in a revocation proceeding must be neutral and detached, so the roles of prosecutor and judge must remain separate and distinct. Merchan v. State, 495 So.2d 855, 856 (Fla. 4th DCA 1986). Further, unlike the limited rights granted parolees, a defendant may appeal an order revoking probation as well as the sentence imposed after revocation. See Fla. R.App. P. 9.140(b)(1)(D).
As recognized by this Court in Floyd and as set out above, there are numerous important differences between parole and probation in Florida. First, parole and parole revocation are conducted by the Parole Commission, which is an administrative body that may be composed of nonlawyers. In contrast, probation and probation revocation fall under the jurisdiction of the courts. Second, while the exclusionary rule does not apply in parole revocation proceedings, it applies in probation revocation proceedings. Third, in Florida all probationers are entitled to the appointment of counsel in probation revocation proceedings, whereas all parolees are not similarly entitled to the appointment of counsel. Fourth, a parolee seeking review of a revocation order must seek an extraordinary writ in the circuit court, while a probationer seeking review of a revocation order may appeal the decision to a district court of appeal. Finally and perhaps most importantly, parole is imposed and revocation proceedings are commenced only after the individual has been tried, convicted, and sentenced, while probation, and certainly probation revocation, is only an interim step in the criminal sentencing process.
As outlined above, it is apparent that parole and probation revocation proceedings in Florida are not the identical administrative proceedings contemplated in Scarpelli. Hopefully, this analysis demonstrates that reliance on Scarpelli is unwarranted in light of the important distinctions between probation revocation procedures in Florida and the administrative procedures contemplated in Scarpelli. These differences are especially important in light of the fact that the Court in Scarpelli specifically distinguished its earlier decision in Mempa which involved probation revocation proceedings like those in Florida which we have characterized as deferred sentencing. The judicial nature of probation revocation proceedings was simply not contemplated by the Court in Scarpelli.

Crawford and Sentencing
Florida law establishing probation revocation proceedings as deferred sentencing hearings is critical to any determination of whether Crawford and the right of confrontation should apply to such proceedings. This Court has expressly held that the Sixth Amendment right of confrontation and Crawford apply to sentencing proceedings. See Rodgers v. State, 948 So.2d 655, 663 (Fla.2006) (holding that "a defendant's rights under the Confrontation Clause apply to the guilt phase, the penalty phase, and sentencing" and that Crawford applies to the penalty phase of a capital trial), cert. denied, ___ U.S. ___, 128 S.Ct. 59, 169 L.Ed.2d 50 (2007); Way v. State, 760 So.2d 903, 917 (Fla.2000) (agreeing with defendant's assertion that the Confrontation Clause applies to sentencing proceedings); Rodriguez v. State, 753 So.2d 29, 43 (Fla.2000) (stating that the Sixth Amendment right of confrontation applies to all three phases of a capital trial); Engle v. State, 438 So.2d 803, 813-14 (Fla.1983) (observing that "sentencing is a critical stage of the criminal proceeding" and that "the right of confrontation protected by cross-examination is a right *1241 that has been applied to the sentencing process"); accord Desue v. State, 908 So.2d 1116, 1117 (Fla. 1st DCA 2005) (assuming that the Sixth Amendment right of confrontation applies to sentencing hearings). We cannot logically refuse to apply Crawford to the deferred sentencing proceedings that take place at a probation revocation hearing while applying Crawford to other sentencing proceedings.

CONCLUSION
Accordingly, because this Court has identified revocation proceedings as deferred sentencing proceedings, and we have held that Crawford applies to sentencing proceedings, I cannot agree with the majority's determination that Crawford should not apply to probation revocation proceedings in Florida. Here, in the same criminal proceeding, the trial court found Robert Sheldon Peters guilty of a violation of his community control, revoked his community control, and sentenced him to twenty-four months in prison for his crime. Probation and community control revocation proceedings, such as these, are deferred sentencing proceedings to which Crawford should apply.
NOTES
[1] Though Peters additionally argues that the lab report does not fall within the business records exception to the hearsay rule, no objection was made on this basis in the trial court and that argument is not discussed in this opinion. Further, in State v. Johnson, 982 So.2d 672 (Fla. 2008), we held that lab reports such as the one involved here are in fact testimonial under the Crawford analysis.
[2] United States v. Wooden, No. 05-13981, 179 Fed.Appx. 601 (11th Cir. May 3, 2006) (noting that neither the Circuit nor the Supreme Court had extended Crawford to supervised release proceedings) (unpublished); See United States v. Williams, 443 F.3d 35 (2d Cir. 2006) (holding that the Sixth Amendment does not apply to supervised release revocation hearings); United States v. Rondeau, 430 F.3d 44 (1st Cir.2005) (holding that the Confrontation Clause does not apply to postconviction proceedings and that Crawford does not apply to supervised release revocation hearings); United States v. Kirby, 418 F.3d 621 (6th Cir.2005) (noting that nothing in Crawford purported to alter the standards set forth in Morrissey or Scarpelli); United States v. Aspinall, 389 F.3d 332 (2d Cir.2004) (same); United States v. Pratt, 52 F.3d 671 (7th Cir.1995) (holding, in an ineffective assistance of counsel action, that a revocation hearing is not part of a criminal prosecution); United States v. Barraza, 318 F.Supp.2d 1031 (S.D.Cal.2004) (holding that Crawford is not controlling authority regarding the right to confrontation in a probation revocation proceeding); People v. Johnson, 121 Cal.App.4th 1409, 18 Cal.Rptr.3d 230 (2004) (holding that probation revocation proceedings are not criminal prosecutions); Jenkins v. State, 862 A.2d 386, 2004 WL 2743556 (Del.2004) (declining to apply Crawford because a violation of probation hearing is neither a formal trial nor a criminal prosecution); Young v. United States, 863 A.2d 804 (D.C.2004) (likening probation revocation to an administrative hearing rather than a criminal prosecution and declining to apply Crawford); Commonwealth v. Wilcox, 446 Mass. 61, 841 N.E.2d 1240 (2006) (holding that a probation revocation proceeding is not a criminal prosecution and that Crawford does not apply); Diaz v. State, 172 S.W.3d 668 (Tex.App.2005) (holding that a community supervision revocation is not a stage of a criminal prosecution and agreeing that Crawford does not apply); State v. Abd-Rahmaan, 154 Wash.2d 280, 111 P.3d 1157 (2005) (accord). Florida's district courts of appeal hold similarly. Sproule v. State, 927 So.2d 46 (Fla. 4th DCA) (rejecting claim that admission of driving record at trial was hearsay and a violation of Sixth Amendment right to confront and cross-examine under Crawford), review denied, 935 So.2d 2 (Fla.2006); see also Russell v. State, 920 So.2d 683 (Fla. 5th DCA) (rejecting appellant's claim that his probation was improperly revoked because the revocation was based solely on otherwise inadmissible hearsay evidence, and holding that Crawford does not apply to revocation of supervised release proceedings), approved, 982 So.2d 642 (Fla. 2008).
[3] We note, without comment, that in Peters' prior July 2003 revocation hearing, the trial court revoked community control, imposed a suspended sentence of twenty-four months, and again ordered that Peters submit to community control for a period of twelve months.
[4] The federal courts have applied a balancing test to determine whether the right of confrontation is triggered under due process. See United States v. Pierre, 47 F.3d 241 (7th Cir. 1995) (affirming revocation, assuming that laboratories performed double-blind validity tests and noting that the record failed to show evidence that PharmChem urinalysis reports were unreliable); United States v. Bell, 785 F.2d 640 (8th Cir. 1986) (remanding on different basis, but finding that the independent urinalysis lab reports were substantially reliable as regular reports of a company which expected its clients to act on the information, and noting that probationer made only general claims that the results might have been defective).
[5] The Court declined to address "the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." Id. at 489, 92 S.Ct. 2593.
[6] If the charges are sustained, the commissioners must enter an order revoking the parole and returning the parolee to prison to serve the sentence originally imposed, reinstating the original order of parole, ordering the placement of the parolee into a community control program, or entering such other order as is proper. § 947.23(6)(a)-(b), Fla. Stat. (2003).
[7] This law is currently codified as section 948.06(2)(b), Florida Statutes (2007).
[8] The "where allowed by law" language was added to the rule after 2003. See In re Amendments to the Fla. Rules of Criminal Procedure-Conform Rules to 2004 Legislation, 900 So.2d 528, 529 (Fla.2005).