FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2022-0478
_____

DANIEL K. MAXWELL,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____


On appeal from the Circuit Court for Leon County.
Francis Allman, Judge.

April 10, 2024

TANENBAUM, J.

This appeal, at first glance, seemed to seek review of the trial court's order denying Daniel Maxwell's motion to withdraw his so-called "plea" to alleged violations of the terms of his probation—a motion he filed about three weeks following the trial court's revocation of his probation and imposition of a new sentence. Maxwell filed his notice of appeal within thirty days of the order denying his motion, but more than thirty days after rendition of the revocation and sentencing orders. As we explain below, however, an admission to an alleged probation violation is not formally a "plea," as that term is used in Florida Rule of Criminal Procedure 3.170(l) and Florida Rules of Appellate Procedure 9.020(h)(1)(I) and 9.140(b)(2)(A)(ii)c. That means the motion to withdraw Maxwell filed did not toll the rendition date of the revocation and sentencing orders, and his current appeal *as to*

*those* orders is untimely. We asked Maxwell to address whether the appeal instead should be considered as one travelling under Florida Rule of Appellate Procedure 9.141, which covers appeals from orders on post-conviction motions. While the State agreed with this approach, Maxwell opposed it and asked that his appeal be treated as timely filed. Maxwell independently may have a post-decretal claim regarding the legality of his resentencing following the revocation of his probation, but we cannot reconstrue the motion Maxwell filed below as asserting such a claim. *Cf.* Fla. R. Crim. P. 3.850(c) (setting out required contents of a motion filed under the rule). All we can do here is dismiss the appeal before us as untimely.

I

Maxwell served time in prison after a trial court adjudicated him guilty of witness tampering and felony battery based on a plea of *nolo contendere* back in 2013.[1] The sentence on each count was eighteen months in prison, the sentences running concurrently. A term of forty-two months of probation followed. In 2018, sometime after Maxwell began serving his probation, his supervising officer charged him with violating the conditions of his probation ("VOP") by breaking the law again. Pursuant to an agreement with the State, Maxwell admitted that he had violated probation. The trial court revoked probation and imposed a new sentence of seventy-one months in prison, giving stipulated credit for jail time served and directing the Department of Corrections to calculate the appropriate credit for the time Maxwell had already served on the convictions under section 921.0017, Florida Statutes. Maxwell did not appeal.

About eight months later, Maxwell sought clarification regarding his sentence. The trial court in response rendered a corrected sentence to reflect that his new sentences were to run concurrently with another sentence. A week after that, the trial court once again corrected the sentence. Twenty-eight days later, Maxwell filed a "Motion to Withdraw Plea." This filing came ten months after the trial court originally had imposed the modified

---

[1] Maxwell moved to withdraw that plea in 2014. The trial court denied that motion.

sentence based on the probation violation. In his motion, Maxwell alleged the following: 1) that he was incompetent at the time of his admission; 2) that the court failed to "address [his] demands"; 3) that his attorney refused to provide him with discovery; 4) that he believed he was going to be processed and released immediately upon arriving to the Department of Corrections; 5) that his scoresheet contained errors; and 6) that he previously had submitted Bar complaints against his court-appointed attorney, which allegedly created a conflict of interest. The trial court denied the motion six months later without a hearing. Maxwell filed this appeal within thirty days of rendition of that denial.

## II

Confusion arises when courts persist in the loose use of the term "plea" in the context of VOP proceedings. There simply is no such thing as a plea to a charged VOP. The principal statute governing VOPs, section 948.06, Florida Statutes, does not refer to such a plea. Rather, the statute gives a probationer the option to "admit" that the charged VOP is true, or to not admit it to be true. § 948.06(2)(a), Fla. Stat.; *see also* Fla. R. Crim. P. 3.790(b) (setting out procedure by which a probationer either "admits" the charged violation to be true or does not "admit").

Pleas do not occur *after* disposition in a criminal case. A defendant will enter his "plea" at the beginning of a criminal matter—at arraignment, typically—but at all events, before trial. *See* Fla. R. Crim. P. 3.160 ("Arraignment"); Fla. R. Crim. P. 3.170(a) (identifying three types of pleas regarding a criminal "charge"—"not guilty, guilty, or, with the consent of the court, no contest"—and requiring that "[e]very plea [] be entered of record"); Fla. R. Crim. P. 3.170(b) (allowing for "plea of guilty or nolo contendere to any and all charges pending against [the defendant] in the State of Florida over which the court would have jurisdiction"); *cf.* Fla. R. Crim. P. 3.170(f), (l) (treating guilty and no-contest pleas as coming before sentencing); Fla. R. Crim. P. 3.171 (treating plea negotiations and agreements as coming before sentencing).

For example, if a defendant pleads not guilty and persists in that plea, there will be a trial on the charges filed in the criminal case. *See* Fla. R. Crim. P. 3.170(e) (providing that a "plea of not

3

guilty is a denial of every material allegation in the indictment or information on which the defendant is to be tried"). Alternatively, if a defendant pleads guilty or *nolo contendere*, changes his plea to one of these before trial, or is found guilty at trial, there will be a judgment of conviction. *See* § 921.0021(2), Fla. Stat. (defining "conviction" to mean "a determination of guilt that is the *result of a plea or a trial*, regardless of whether adjudication is withheld" (emphasis supplied)); Fla. R. Crim. P. 3.650 (defining "judgment" to mean "the adjudication by the court that the defendant is guilty or not guilty"); Fla. R. Crim. P. 3.670 (providing for rendition of "judgment of guilty" upon a finding of guilt, but allowing for a "withhold [of] an adjudication of guilt if the judge places the defendant on probation").

The point here is that a plea—one way or the other—precedes a judgment of conviction, which means a plea necessarily precedes imposition of probation. That is, there cannot be the imposition of probation without a formal determination of guilt, which always comes *after* a defendant enters his plea to the criminal charges filed against him. *See* § 948.01(1), Fla. Stat. (authorizing probation as an alternative sentencing disposition for "a defendant in a criminal case, except for an offense punishable by death, who has been found guilty by the verdict of a jury, *has entered a plea of guilty or a plea of nolo contendere*, or has been found guilty by the court trying the case without a jury." (emphasis supplied)); § 921.187(1), Fla. Stat. (authorizing probation as component of sentencing "alternatives provided in this section for the *disposition* of criminal cases" (emphasis supplied)); *cf.* Fla. R. Crim. P. 3.790(a) (treating probation as part of sentencing).

To say that a trial court took a plea from a defendant after disposition of a criminal case—regardless of whether adjudication has been withheld—makes no sense because, at that point, the defendant's guilt as to the criminal charges in the case had already been formally determined. *Cf.* Fla. R. Crim. P. 3.172(c)(4), (5) (requiring that trial court ensure that a defendant wishing to plead guilty or *nolo contendere* understands that such plea waives his right to further litigate the question of his guilt and to have a trial on the criminal charges against him). By the time a defendant finds himself on probation in a criminal case, there no longer is a dispute over his guilt, so nothing left to plead to. *Cf. Peters v. State*,

4

984 So. 2d 1227, 1232 (Fla. 2008) (acknowledging "that while probation is not necessarily a sentence, the criminal prosecution has ended with either a sentence of incarceration or a suspended sentence of probation").

This difference in terminology in the VOP context is commensurate with where in the criminal process probation falls. A VOP proceeding does not involve a new question of criminal culpability that could lead to another formal adjudication of guilt. Put another way, a VOP affidavit does not initiate a separate process by which a criminal conviction is sought. *See Id.* at 1233 ("Because a probationer has already been found guilty of the crime charged before being placed on probation or under community supervision, the revocation proceeding implicates only a limited, conditional liberty interest rather than the absolute liberty interest enjoyed by a criminal defendant prior to trial."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty."); *cf. Burns v. United States*, 287 U.S. 216, 222 (1932) ("The question, then, in the case of the revocation of probation, is not one of formal procedure either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion.").

Probation, instead, is more properly considered as a component of sentencing. *Cf. Peters* 984 So. 2d at 1231–32 (noting that the purpose of probation is "rehabilitation of a party whose guilt has been established" and acknowledging "that while a defendant is not incarcerated when placed on probation, the defendant is nonetheless serving a type of suspended sentence"); *Green v. State*, 463 So. 2d 1139, 1140 (Fla. 1985) (agreeing that a probation violation proceeding "constitutes a deferred sentencing proceeding"); *Bernhardt v. State*, 288 So. 2d 490, 495 (Fla. 1974) (explaining that the "underlying concept of probation is rehabilitation rather than punishment and presupposes the fact that probationer is not in prison confinement"). To be more specific, when a trial court imposes a "probationary split sentence," as it did here, the court stops short of giving the defendant the maximum authorized sentence. Instead, the court in essence utilizes

probation as a mechanism to assess the defendant's "amenability to reform" from his conduct after the original sentencing. *Poore v. State*, 531 So. 2d 161, 163 (Fla. 1988), (approvingly quoting *Williams v. Wainwright*, 650 F.2d 58, 61 (5th Cir. 1981), for the proposition that an increased sentence may be "imposed upon the revocation of probation . . . based upon the defendant's subsequent conduct demonstrating his lack of amenability to reform"); *cf. id.* at 164–65 (treating a violation of probation as a new, relevant sentencing fact that may justify an increased sentence when a "probationary split sentence" had been imposed).

As part of the sentencing continuum, probation allows the trial court the flexibility to try out varying (and likely progressively increased) lengths of incarceration, up to the statutory maximum, to find, cumulatively, a bespoke period of incarceration appropriate to the defendant's "past life, health, habits, conduct, and mental and moral propensities." *Williams v. New York*, 337 U.S. 241, 245 (1949); *see also id.* at 247, 249 (explaining how probation can serve as an "investigation technique[]" that can help a trial judge select "an appropriate sentence" based on "the fullest information possible concerning the defendant's life and characteristics . . . rather than on guesswork and inadequate information"); *cf. Pa. ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) (explaining that in determining a sentence, "justice generally requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender," such that the defendant's "past may be taken to indicate his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him").

Here, then, we see the true service that probation provides to the sentencing endeavor. It allows the trial court to impose a prison sentence based on all the individualized information available to it at the time regarding the defendant; and then to constitutionally "impos[e] a new sentence, whether greater or less than the original sentence," based on the defendant's conduct while on probation that might "throw[] new light upon the defendant's life, health, habits, conduct, and mental and moral propensities." *North Carolina v. Pearce*, 395 U.S. 711, 723 (1969)

6

(internal quotation and citation omitted). The Supreme Court continued as follows:

> The freedom of a sentencing judge to consider the defendant's conduct subsequent to the first conviction in imposing a new sentence is no more than consonant with the principle . . . that a State may adopt the prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.

*Id.* (internal quotation and citation omitted). To be clear here: The modified sentence imposed on a revocation of probation is appropriately enhanced punishment for the original offense of conviction, based on new information gleaned from the defendant's behavior while on probation; it is not punishment for the conduct determined to be a violation of probation.

As we already mentioned, when we look at Maxwell's case, we see that the *only* plea Maxwell entered in this case occurred *way back in 2013*—when he pleaded *nolo contendere* to the charges reflected in the information. Based on that plea, the trial court adjudicated Maxwell guilty and imposed a *soi-disant* "probationary split sentence"—a prison time of specified duration, followed by a term of probation. *See Poore*, 531 So. 2d at 164 (describing "a 'probationary split sentence' consisting of a period of confinement, none of which is suspended, followed by a period of probation" as an authorized "sentencing alternative in Florida"); *see also Glass v. State*, 574 So. 2d 1099, 1102 (Fla. 1991) (reaffirming the court's "position that courts are authorized to impose probationary split sentences"); *but cf.* § 948.012, Fla. Stat. He sought way back to withdraw that plea, and when the trial court denied the request, the adjudication of guilt stood.

Later, when the probation officer charged Maxwell with violating the conditions of his probation, the officer initiated the process spelled out in section 948.06—and not a new criminal prosecution. *See* § 948.06(1)(a)–(b), Fla. Stat. That process, in turn, does not include an arraignment or entry of a plea to the charged violations. When Maxwell was brought before the trial court on a VOP warrant, the trial court simply "advise[d] him [] of such charge of violation," at which point Maxwell had the option to "admit" that the charge was true, or not (rather than to plead

7

guilty or not guilty). *Id.* (2)(a); *see also* Fla. R. Crim. P. 3.790(b). For a violation, the statute authorizes resentencing (read: imposition of an increased term of incarceration or modification of other terms of the original sentence) on the same conviction, and there is no double-jeopardy problem as long as the new, as-modified sentence—which has the effect of increasing the total incarceration above what was originally imposed on the offense of conviction—is not "based solely on the same facts at issue" before the trial court at the time of the original sentence. *Poore*, 531 So. 2d at 163 (citing *Pearce*, 395 U.S. 711 (1969)).

Key here is that the enhanced sentence imposed on Maxwell under section 948.06 truly must be based on *new* information gleaned from the defendant's behavior while on probation, not merely on a trial judge's change of heart. That is, there must be "a relevant new fact not previously considered" before the trial court "constitutionally is permitted to impose a greater sentence" under section 948.06. *Id.* at 164. The statutory authorization for resentencing on a revocation is contingent on the proper demonstration of this new relevant fact, "not previously considered," by sufficient evidence. *Id.* Maxwell's violation of the conditions of his probation, of course, would be that relevant new fact.

Indeed, Maxwell entered an *admission* to the truthfulness of the charged violation. That admission did not change Maxwell's legal status in the criminal case, as he already had been adjudicated guilty in 2013. The only legal effect of that admission is that it supported the trial court's authority at that point to resentence Maxwell to any term of incarceration that "it might have originally imposed." § 948.06(2)(b), (e), Fla. Stat.; *but cf. State v. Rabedeau*, 2 So. 3d 191, 193 (Fla. 2009) (noting, in a probation revocation context, that a defendant sentenced upon conviction of a crime who "serves some portion of that sentence . . . is entitled to receive credit for the actual service of that sentence, or any portion thereof, in a *resentencing* for the same crime" (emphasis supplied)).

This is not to say that an admission in a VOP is legally—or constitutionally—insignificant. Though the trial court has broad discretion to determine whether to revoke probation and impose a new sentence, "this discretionary power must be exercised in

accordance with certain due process requirements." *Bernhardt*, 288 So. 2d at 495; *see also Black v. Romano*, 471 U.S. 606, 610 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation."). The probationer, for instance, is entitled to the provision of effective assistance of counsel "before he is required to respond in any manner to the revocation charges." *State v. Hicks*, 478 So. 2d 22, 23 (Fla. 1985). There also must be a hearing at which evidence is presented that is "sufficient to satisfy the conscience of the court that a condition of probation has been violated." *Bernhardt*, 288 So. 2d at 495; *see also Gagnon*, 411 U.S. at 786 (enumerating the minimum due-process requirements for a probation-violation proceeding); *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972) ("This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation."); *cf. Burns*, 287 U.S. at 223 ("While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice.").

When Maxwell "admit[ted] to be true" the charged VOP, then, he effectively waived this process that ordinarily would be due him for determination of that new sentencing fact. *Cf.* § 948.06(b), (d), Fla. Stat. (authorizing revocation upon admission but requiring a hearing if the violation is not admitted); *see generally United States v. Olano*, 507 U.S. 725, 733 (1993) (explaining that "forfeiture is the failure to make the timely assertion of a right" but "waiver is the intentional relinquishment or abandonment of a known right" (internal quotation and citation omitted)). An admission has the effect of waiving the probationer's entitlement to "an opportunity to be fully heard on his or her behalf in person or by counsel." § 948.06(2)(d), Fla. Stat. It also waives his right to require the State "establish by greater weight of the evidence that the violation of probation occurred." *Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008). In the light of these due-process parameters, the validity of the probationer's admission of the probation violation takes on constitutional and legal import.

9

## III

This brings us back to Maxwell's "Motion to Withdraw Plea." As we explained above, the admission to a VOP was not a plea, so there was nothing to be withdrawn. An appeal of the revocation and resulting sentence would have been pursuant to Florida Rule of Appellate Procedure 9.140(b)(1)(D) and (E) (relating to a post-judgment order "revoking or modifying probation" and to "an unlawful or illegal sentence"), not rule 9.140(b)(2)(A)(ii)c. (regarding "an involuntary plea, if preserved by a motion to withdraw plea"). The motion, then, did not postpone the deadline for taking an appeal under the subdivisions of (b)(1), and the thirty days for doing so consequently had run before Maxwell invoked this court's jurisdiction here.

This basically ends the current appeal for Maxwell. It, however, may not end his access to relief. Despite its title (and the absence of a plea), the motion effectively lodged several collateral attacks related to Maxwell's decision to admit to the charged VOP. His motion in essence purported to challenge the legal validity of the admission and the efficacy of counsel during the proceeding. Because a VOP proceeding involves the question whether the defendant should be resentenced (as we already have discussed), Maxwell's challenge necessarily was directed to the latest sentencing that resulted from his admission. That is, insofar as Maxwell challenged the validity of his admission, he attacked the authority of the trial court to resentence him with an enhanced prison term. Central to that attack is Maxwell's contention that the VOP proceeding did not comport with due-process requirements.

We do not comment here on the legal sufficiency of Maxwell's claims or what might constitute a proper collateral attack on a resentencing that stems from a VOP proceeding.[2] All we are saying

---

[2] It is conceivable that one or more of the claims could have been raised in a direct appeal of the revocation and further sentencing order—which he failed to perfect—and those would be procedurally barred from consideration in any collateral attack. *See* Fla. R. Crim. P. 3.850(c); *Adams v. State*, 380 So. 2d 423, 424 (Fla. 1980) (noting that "asserted issues . . . could have been raised"

here is that rule 3.850 may be read broadly enough to serve facially as the vehicle by which Maxwell could assert the collateral claims adumbrated in Maxwell's motion. The rule authorizes a motion to vacate a sentence that has been illegally imposed, imposed without jurisdiction, or otherwise subject to collateral attack. Fla. R. Crim. P. 3.850(a)(1), (3), (6).[3] As we have explained, the trial court's authority to resentence Maxwell turned on the legal comportment of the process surrounding Maxwell's admission, a process that he purported to attack from several angles in his "post-resentencing" motion.

With this stated, we must recognize the limit of our authority when reviewing a final order on appeal. As we suggested above, Maxwell's motion did not comply with the requirements of rule 3.850 and was not framed as a motion under that rule. We cannot recharacterize a motion filed in the trial court as something completely different and then review the court's disposition of the motion as originally framed as if it were a disposition on a motion that was not actually before it. All we have now is an untimely appeal from an order revoking probation and imposing a prison sentence. There is but one disposition in this case.

DISMISSED.

WINOKUR and NORDBY, JJ., concur.

---

on direct appeal "and these matters thus will not support a collateral attack"); *Sullivan v. State*, 372 So. 2d 938, 939 (Fla. 1979) (characterizing issues that "could have been raised in" a direct appeal cannot "support a collateral attack"); *Spenkelink v. State*, 350 So. 2d 85, 85 (Fla. 1977) (finding that a failure to raise an issue on direct appeal "waives the right to raise that claim" in a collateral proceeding); *cf. Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014) (holding that claim regarding competency was "procedurally barred because [the defendant] did not raise this issue on direct appeal").

[3] The rule also allows for a motion for relief if "the plea was involuntary." Fla. R. Crim. P. 3.850(a)(5). As we already have explained, however, an admission to a VOP is not a plea, so this subdivision does not apply.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Candice Kaye Brower, Regional Counsel, Melissa Joy Ford, Assistant Regional Counsel, Tallahassee, for Appellant.

Ashley Moody, Attorney General, David Welch, Assistant Attorney General, Tallahassee, for Appellee.