Even if expert testimony was admissible, Harris' expert was wrong—the law does allow municipal ordinances to be requested in the praecipe rather than introduced as exhibits at the hearing.[10]

The district court did not err in not admitting the evidence of Harris' expert. Harris' second assignment of error is without merit.

## VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

[10] See *State v. Bush, supra* note 7.

---

State of Nebraska, appellee, v.
Scott D. Johnson, appellant.
___ N.W.2d ___

Filed January 17, 2014.    No. S-13-118.

1. **Probation and Parole.** The revocation of probation is a matter entrusted to the discretion of a trial court.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.
3. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law.
4. **Appeal and Error.** An appellate court resolves questions of law independently of the lower court's conclusion.
5. **Moot Question.** A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome.
6. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.
7. **Moot Question: Appeal and Error.** Under the public interest exception to the mootness doctrine, an appellate court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination.

8. ____: ____. When determining whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.

9. **Probation and Parole: Due Process.** The minimum due process protections required at a probation revocation hearing are as follows: (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. In addition, the parolee or probationer has a right to the assistance of counsel in some circumstances where the parolee's or probationer's version of a disputed issue can fairly be represented only by a trained advocate.

10. **Probation and Parole: Proof.** While the revocation of probation is a matter entrusted to the discretion of a trial court, unless the probationer admits to a violation of a condition of probation, the State must prove the violation by clear and convincing evidence.

11. **Evidence: Words and Phrases.** Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Shawn Elliott for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ.

Miller-Lerman, J.
## NATURE OF CASE
In November 2007, Scott D. Johnson was convicted in the district court for Lancaster County of abuse of a vulnerable adult based on the financial exploitation of a relative. On

February 1, 2008, he was sentenced to 3 years' probation. On April 13, 2010, the State filed a motion to revoke Johnson's probation on the basis that Johnson had allegedly assaulted another individual, Martha Majocha. After a hearing, the district court found that the State had proved by clear and convincing evidence that Johnson had violated the terms and conditions of his probation by assaulting Majocha, and therefore, the district court revoked Johnson's probation and sentenced him to 1 to 2 years' imprisonment with 26 days' credit for time served. Johnson appeals the order revoking his probation. We affirm.

## STATEMENT OF FACTS

In November 2007, Johnson was convicted of abuse of a vulnerable adult, a Class IIIA felony, and the district court sentenced Johnson to 3 years' probation on February 1, 2008. The conviction of abuse of a vulnerable adult was based on the financial exploitation of Johnson's step-great-grandmother. Johnson appealed the conviction and sentence, and the district court stayed the order of probation during the pendency of the appeal. The Nebraska Court of Appeals affirmed the conviction and sentence in a memorandum opinion filed on February 3, 2009, in case No. A-08-202. We denied Johnson's petition for further review. On April 20, the district court filed an "Order of Probation" reinstating Johnson's sentence of 3 years' probation.

On April 13, 2010, the State filed a motion to revoke Johnson's probation, alleging that he had failed "to refrain from unlawful or disorderly conduct or acts injurious to others." The basis for the motion to revoke probation was the alleged physical assault of Majocha by Johnson on March 18, 2010. Johnson was living with Majocha at the time of the alleged assault.

On January 28, 2011, Johnson filed a motion to discharge the motion to revoke probation on the bases that the matter was not given prompt consideration pursuant to Neb. Rev. Stat. § 29-2267 (Reissue 2008) and that his constitutional rights to a speedy trial and due process were violated. The district court denied Johnson's motion to discharge, finding that the matter

had been continued at Johnson's request and that Johnson had waived his right to a speedy "trial." Johnson appealed, and in case No. A-11-285, the Court of Appeals sustained the State's motion for summary dismissal on November 15, 2011, stating that an order denying a motion to discharge in probation revocation proceedings is not a final, appealable order. We denied Johnson's petition for further review.

After the mandate from the Court of Appeals was returned, the district court conducted an evidentiary hearing on the motion to revoke probation. The hearing was conducted over 2 days, on October 16 and November 21, 2012. It is the outcome of this probation revocation hearing which gives rise to the instant appeal.

At the probation revocation hearing, it was learned that Majocha had died on January 2, 2012, and thus she was not present at the hearing. On October 16, the State offered, over Johnson's objection, exhibit 20, which was a copy of an obituary for Majocha. The district court reserved its ruling on exhibit 20, and ultimately, it was not received into evidence. Nevertheless, on November 21, the district court stated that "the State [had] made a showing that . . . Majocha is dead" and that she was "simply unavailable to testify because of her death."

During the parties' opening statements at the hearing on October 16, 2012, the State argued that *State v. Clark*, 8 Neb. App. 525, 598 N.W.2d 765 (1999), and *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011), provide that the rules of evidence do not apply to a probation revocation proceeding. The district court then stated that

> the Court of Appeals and the Supreme Court have made it clear that ordinarily in a motion to revoke probation the defendant has a right to face and confront and cross-examine witnesses, unless the Court makes a finding of good cause as to why the defendant should not have the right to cross-examine and to face and confront witnesses against the defendant.

Both the State and Johnson agreed with the district court's characterization of the law.

Johnson further asserted that § 29-2267 provides that the probationer shall have the right to hear and "confront" the evidence against him. Section 29-2267 provides:

> Whenever a motion or information to revoke probation is filed, the probationer shall be entitled to a prompt consideration of such charge by the sentencing court. The court shall not revoke probation or increase the requirements imposed thereby on the probationer, except after a hearing upon proper notice where the violation of probation is established by clear and convincing evidence. The probationer shall have the right to receive, prior to the hearing, a copy of the information or written notice on the grounds on which the information is based. *The probationer shall have the right to hear and controvert the evidence against him*, to offer evidence in his defense and to be represented by counsel.

(Emphasis supplied.)

The State then called Officer Chris Schamber to testify. Officer Schamber testified that he had been on duty on March 18, 2010, and that on that day, he was called to the hospital to speak with Majocha regarding her injuries. Officer Schamber testified that at the hospital, he observed Majocha's injuries, specifically bruising on her breasts and shins. The State then questioned Officer Schamber regarding statements that Majocha had made. Johnson objected on the grounds that the statements were inadmissible hearsay and that because Majocha was not subject to cross-examination, admission of the statements would be a violation of Johnson's constitutional rights to due process and confrontation. The district court took Johnson's objection under advisement and continued the hearing to November 21, 2012.

The hearing resumed on November 21, 2012, and Officer Schamber resumed his testimony. He testified that he taped his interview with Majocha using a microcassette recorder. The State asked Officer Schamber to testify as to what Majocha told him during the interview. Johnson again objected based on hearsay and asserted that admission of the evidence would violate his constitutional rights to due process and confrontation. Johnson also argued that the State had not made a

showing of good cause as to why Johnson should be denied his right to confront and cross-examine, as is required by case law and § 29-2267.

The district court granted Johnson a continuing objection and allowed Officer Schamber to testify. Officer Schamber testified that Majocha said that she and Johnson lived together and that Johnson had caused her injuries over the course of approximately 3 months. Majocha stated that during those 3 months, Johnson would injure various parts of her body, including her shins and breasts. Majocha stated that Johnson had caused the injuries to her shins by kicking her while he was wearing a pair of cowboy boots. She further stated that Johnson had caused the injuries to her breasts by grabbing them and twisting them. Majocha also told Officer Schamber that she and Johnson were not sexually intimate, but that they did sleep in the same bed.

Officer Schamber testified that he took photographs of Majocha's injuries, and the court received the photographs into evidence over Johnson's objection. Officer Schamber then testified that after conducting the interview with Majocha, he arrested Johnson, giving rise to a separate criminal case not otherwise relevant to the instant case involving revocation of probation in the matter wherein his relative was the victim. Officer Schamber stated that Johnson admitted that he and Majocha lived together.

The State then called Sgt. Tracy Graham, who had met with Majocha at the hospital within days following the initial report by Officer Schamber. Sergeant Graham testified that she observed bruising on several parts of Majocha's body, including her breasts and shins. Sergeant Graham interviewed Majocha and made an audio and visual DVD recording of the interview. The State offered the DVD recording and a transcript of the recording into evidence, and Johnson objected. The district court reserved its ruling on the objection and granted Johnson a continuing objection. The district court stated that it would take the matter of the objection under advisement. Sergeant Graham was excused, and the State stated that it did not have any additional evidence. The district court then took a recess to consider Johnson's objections.

Following the recess, the district court overruled Johnson's objections. The district court stated that it found that the State showed good cause to allow the hearsay statements into evidence because Majocha was unavailable due to her death. The district court judge stated:

> The Court has reviewed the evidence and the relevant case law. I am going to make a finding consistent with [*State v. Clark*, 8 Neb. App. 525, 598 N.W.2d 765 (1999),] and [*State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011)], and other relevant case law, that the State has made a showing that . . . Majocha is dead, and I am going to make a finding that, that constitutes good cause for denying [Johnson] the right of confrontation at this hearing. Obviously, she's simply unavailable to testify because of her death.
>
>   I am, therefore, going to receive each of the exhibits . . . and consider her statements to Officer Schamber, as well as her statements to [Sergeant] Graham, and overrule [Johnson's] objections to the evidence.

The district court also stated that it found the hearsay statements to be "reliable and trustworthy" because they were corroborated by the photographs that were received into evidence depicting Majocha's injuries and by Johnson's statements to Officer Schamber that Johnson lived with Majocha. The defense rested without offering additional evidence at this time.

The district court then stated on the record that it found that the State had proved by clear and convincing evidence that Johnson had violated the terms and conditions of his probation. The court stated:

> The Court does find by clear and convincing evidence that [Johnson] did violate the terms and conditions of his probation as alleged in the Motion to Revoke Probation. As indicated previously . . . the rules of evidence do not apply in a revocation of probation proceeding, subject to case law regarding confrontation rights. And I previously made the finding consistent with [*State v. Clark, supra*,] and [*State v. Shambley, supra*], that the State has shown

good cause why [Johnson] is denied his confrontation right, that is [Majocha] has died.

Again, I find that the statements made by [Majocha] to Officer Schamber and [Sergeant] Graham are corroborated. They're corroborated by the photographs and they're corroborated by [Johnson's] statements that he did live with . . . Majocha, both at the address where he was arrested, and then at a previous address. The statements with [Majocha] are consistent with the injuries observed by the officers and as depicted in the photographs. I do find corroboration for those statements.

I believe the statements are trustworthy and reliable, even if they are not — don't meet that legal standard, nevertheless, I find that [the] statements are corroborated. And I find that, based on the evidence presented, that the State has proven by clear and convincing evidence that [Johnson] did violate the terms and conditions of his probation as alleged in the Motion to Revoke Probation.

After the district court stated its findings, Johnson was given permission to withdraw his rest and offered an exhibit containing police reports regarding an alleged sexual assault that Majocha had reported to the police in October 2009 involving a different assailant. Johnson argued that the reports cast doubt on Majocha's credibility. The district court received the exhibit into evidence.

The district court then restated its finding that the State had proved by clear and convincing evidence that Johnson violated the terms and conditions of his probation, and the court set the matter for sentencing. On January 18, 2013, the district court filed an order that sentenced Johnson to 1 to 2 years' imprisonment with 26 days' credit for time served.

Johnson appeals.

## ASSIGNMENTS OF ERROR

Johnson assigns, restated, that the district court erred when it (1) received into evidence hearsay statements of an unavailable witness at the hearing on the State's motion to revoke Johnson's probation, in violation of the rules of evidence and

constitutional rights to due process and confrontation, and (2) found that the State had proved by clear and convincing evidence that Johnson violated a term of probation.

## STANDARDS OF REVIEW

[1,2] The revocation of probation is a matter entrusted to the discretion of a trial court. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*. See, also, *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013).

[3,4] The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law. *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013). An appellate court resolves questions of law independently of the lower court's conclusion. See *State v. Leibel*, 286 Neb. 725, 838 N.W.2d 286 (2013).

## ANALYSIS

The State sought to revoke Johnson's probation on the basis that he failed to refrain from unlawful or disorderly conduct or acts injurious to others, in violation of the terms of his probation. The incident upon which the revocation was proposed was Johnson's alleged assault of Majocha. After an evidentiary hearing, probation was revoked. Johnson claims that he was denied his right to due process and his right of confrontation under the Sixth Amendment and that the evidence was insufficient. We find no merit to his assignments of error.

[5-8] As an initial matter, we note that at oral argument, it was suggested that Johnson has been released from confinement and that as a result, this case has become moot. We have explained mootness and our ability to review a moot issue as follows:

> A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the litigation's outcome. Although mootness does not prevent appellate jurisdiction,

it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

But under the public interest exception, we may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. And when determining whether a case involves a matter of public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem.

*Evertson v. City of Kimball*, 278 Neb. 1, 7, 767 N.W.2d 751, 758 (2009) (citations omitted). See, also, *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

This appeal presents valid reasons for applying the public interest exception. In certain of their appellate assertions, the parties refer to the Sixth Amendment right to confrontation, thus suggesting that the Sixth Amendment applies to probation revocation proceedings. Probation revocation proceedings are not criminal prosecutions, and although due process rights apply to probation revocation proceedings, the Sixth Amendment does not. We believe authoritative guidance is warranted on the issue of constitutional "confrontation" as that concept relates to probation revocation hearings. Accordingly, this case falls within the public interest exception, and we consider the appeal.

[9] Section 29-2267 provides in relevant part that during probation revocation proceedings, "the probationer shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel." Relying on U.S. Supreme Court cases, we have described the minimum due process protections required at a probation revocation hearing as follows:

(1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and

documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise "'specifically finds good cause for not allowing confrontation'"; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. In addition, the parolee or probationer has a right to the assistance of counsel in some circumstances where the parolee's or probationer's version of a disputed issue can fairly be represented only by a trained advocate.

*State v. Shambley*, 281 Neb. 317, 327, 795 N.W.2d 884, 893 (2011) (citations omitted).

Under Neb. Rev. Stat. § 27-1101(4)(b) (Reissue 2008), the formal rules of evidence do not apply to a probation revocation hearing. Section 27-1101 states:

(4) The [Nebraska Evidence] [R]ules, other than those with respect to privileges, do not apply in the following situations:

. . . .

(b) Proceedings for extradition or rendition; preliminary examinations or hearings in criminal cases; sentencing or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

In areas where the formal rules of evidence do not apply, we nevertheless take guidance from the rules. E.g., *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007) (stating that Nebraska Evidence Rules do not apply in cases involving termination of parental rights but serve as guidepost).

The foregoing framework applicable to a probation revocation proceeding requires due process, but it is settled law that a "[p]robation revocation . . . is not a stage of a criminal prosecution." *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). We have recognized the foregoing principles in *Shambley, supra*. We have also noted in *Shambley* that in view of this framework, a probation revocation hearing should be "'flexible enough to consider evidence . . . that

would not be admissible in an adversary criminal trial.'" *Id*. at 327, 795 N.W.2d at 893 (quoting *Morrissy v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

Johnson claims that the district court erred when it received and considered the hearsay statements of Majocha as recited by Officer Schamber and Sergeant Graham and the associated DVD evidence. He refers us to the exceptions to the hearsay rule found in Neb. Rev. Stat. § 27-804 (Reissue 2008) and contends that although Majocha was unavailable, the statements were not reliable and thus not admissible under any exception to the rule excluding hearsay. He contends that he was denied his "right to confront and to cross-examine" Majocha. Brief for appellant at 20.

As noted, the formal rules of evidence do not apply to probation revocation hearings. § 27-1101(4)(b). But admission of evidence at a probation revocation hearing is not limitless. Our cases have previously considered a court's reliance on hearsay evidence in parole, probation, and similar hearings. E.g., *State v. Mosley*, 194 Neb. 740, 235 N.W.2d 402 (1975), *overruled on other grounds, State v. Kramer*, 231 Neb. 437, 436 N.W.2d 524 (1989); *State v. Clark*, 8 Neb. App. 525, 598 N.W.2d 765 (1999). We have observed that even though the evidentiary rules are relaxed, it is inadvisable for a court to rely solely on unsubstantiated hearsay. See *State v. Shambley, supra*. However, where, as in this case, the unavailability of a witness is shown and the court finds indicia of reliability and corroboration of the hearsay evidence through other evidence, good cause has been shown and the court may rely on the hearsay evidence in the absence of cross-examination. We believe the district court followed these established considerations in this case and did not err when it received and credited the hearsay statements of Majocha.

Johnson further argues that admission of Majocha's hearsay statements to the effect that Johnson assaulted her denied him his Sixth Amendment right to confrontation. The appellate arguments presented to us couched in the language of the Sixth Amendment guarantee of the right to confront witnesses inappropriately elevate the current probation revocation proceedings. Section 29-2267 affords a probationer a right to

"controvert" the evidence against him or her. Case law affords him or her due process as described above. But probation revocation proceedings are not criminal prosecutions, and the statutory right to controvert evidence is not the equivalent of the Sixth Amendment right to confront a witness.

Recent legal literature and case law are replete with discussion of the relevance of the Sixth Amendment's confrontation guarantee as it pertains to probation revocation proceedings. E.g., *Peters v. State*, 984 So. 2d 1227 (Fla. 2008) (cases collected); Esther K. Hong, *Friend or Foe? The Sixth Amendment Confrontation Clause in Post-Conviction Formal Revocation Proceedings*, 66 SMU L. Rev. 227 (2013). Much of the discussion is triggered by the case of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), in which the U.S. Supreme Court generally held that an out-of-court testimonial statement of an unavailable declarant is not admissible at a criminal trial unless a defendant had a prior opportunity to cross-examine the declarant. If these requirements are not satisfied, the Sixth Amendment Confrontation Clause requires exclusion of the evidence. Since *Crawford* was decided, the majority of jurisdictions have held that *Crawford* concerns only Sixth Amendment confrontation rights in criminal prosecutions and that because parole or probation revocation proceedings are not criminal prosecutions, neither *Crawford* nor the Sixth Amendment Confrontation Clause applies to parole or probation revocation proceedings. See *Peters v. State, supra*.

We agree with the majority of courts which have concluded that the Sixth Amendment's confrontation guarantee does not apply to probation revocation proceedings. The "[c]ritical . . . distinction between a criminal prosecution at trial, during which a defendant enjoys the protections of the Sixth Amendment, and a [probation] revocation hearing is the fact that the accused at trial awaits a determination of guilt or innocence." *Peters v. State*, 984 So. 2d at 1231. The full range of constitutional rights available to an individual accused of a crime are not available in a probation revocation hearing. See, e.g., *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984) (reiterating that there is no right

to jury trial before probation is revoked). To the extent that Johnson claims he was denied a Sixth Amendment constitutional right of confrontation at his probation revocation hearing, we reject this assignment of error. It logically follows that a *Crawford* analysis is inapplicable to probation revocation evidentiary matters.

[10,11] Johnson also contends that the evidence was insufficient to revoke his probation. We reject this argument. While the revocation of probation is a matter entrusted to the discretion of a trial court, unless the probationer admits to a violation of a condition of probation, the State must prove the violation by clear and convincing evidence. *State v. Clark*, 8 Neb. App. 525, 598 N.W.2d 765 (1999). See, also, § 29-2267. Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *R & B Farms v. Cedar Valley Acres*, 281 Neb. 706, 798 N.W.2d 121 (2011). We have determined above that the statements of Majocha to the effect that Johnson assaulted her were admissible. We need not repeat the other graphic evidence here. The district court determined that the evidence clearly and convincingly shows that Johnson acted in a manner that violated the terms of his probation in that, at a minimum, he failed to refrain from acts injurious to others. We find no error in this determination.

## CONCLUSION

By application of the public interest exception to the mootness doctrine, this case presents an opportunity to consider the relationship of the Sixth Amendment confrontation guarantee and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), as they relate to probation revocation proceedings. Because probation revocation proceedings are not criminal prosecutions, these rights do not apply, but the probationer is entitled to due process and an opportunity to controvert the evidence against him or her. The district court did not err when it revoked Johnson's probation. Accordingly, we affirm.

AFFIRMED.

CASSEL, J., not participating.