[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15446
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 10, 2011
JOHN LEY
CLERK

Agency No. A035-089-741

AGOSTINO ACCARDO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 10, 2011)

Before CARNES, PRYOR and COX, Circuit Judges.

CARNES, Circuit Judge:

Agostino Accardo, a native and citizen of Italy, seeks review of the final

order of removal by the Board of Immigration Appeals and the Board's interim order, which found that Accardo was subject to removal under the Immigration and Nationality Act because he had been convicted of an "aggravated felony." The Board concluded that a violation of 18 U.S.C. § 892(a) is categorically a crime of violence. We disagree with the Board's conclusion on the categorical approach because § 892(a) encompasses some criminal behavior that falls within the definition of "aggravated felony" and some that does not. For that reason, we grant Accardo's petition and remand to the Board for it to apply the modified categorical approach and determine in the first instance whether Accardo was actually convicted of an aggravated felony under that approach.

I.

In February 2007 Accardo pleaded guilty to violating 18 U.S.C. § 892(a) by making an extortionate extension of credit. The Department of Homeland Security initiated removal proceedings, charging that Accardo was removable pursuant to INA § 237(a)(2)(A)(iii) as an alien who had been convicted of an aggravated felony. Specifically, the Department argued that Accardo had been convicted of a "crime of violence" as defined by 18 U.S.C. § 16, which constitutes an "aggravated felony" under INA § 101(a)(43)(F). The Department argued at a hearing before an Immigration Judge that § 892(a) was a divisible statute and that Accardo had been convicted of a crime of violence under the modified categorical approach. The IJ

2

applied the modified categorical approach and granted Accardo's motion to terminate removal proceedings. The IJ determined that Accardo had neither been convicted of, nor had he admitted to committing, a crime of violence even though in his plea colloquy Accardo declared that he and his victim understood that her "failure to make repayment of all [the] money could result in the use of criminal means to cause harm to her reputation in the community." Accardo never indicated in the plea colloquy or otherwise that he would have harmed the person or property of his victim, as distinguished from her reputation, if she failed to repay the loan.

The Department of Homeland Security appealed the IJ's decision, and the BIA "sustained" the appeal and reinstated the removal proceedings. The Board concluded that § 892(a) was categorically a crime of violence under 18 U.S.C. § 16(a), and it remanded the case to the IJ. Alternatively, the Board held that § 892(a) was categorically a crime of violence under 18 U.S.C. § 16(b). On remand, the IJ issued an order of removal. Accardo again appealed to the Board, which declined to review its earlier decision and dismissed Accardo's appeal from the order of removal. Accardo contends that the Board erred in finding that a conviction for the extortionate extension of credit under 18 U.S.C. § 892(a), as defined by 18 U.S.C. § 891(6), is a crime of violence under 18 U.S.C. § 16 and thereby an aggravated felony within the meaning of the INA.

3

II.

We review de novo whether a conviction qualifies as an "aggravated felony." Obasohan v. U. S. Att'y Gen., 479 F.3d 785, 788 (11th Cir. 2007), abrogated on other grounds by Nijhawan v. Holder, ___ U.S. ___ , 129 S.Ct. 2294 (2009); see also Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008).

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA specifically defines an "aggravated felony" to include a "crime of violence" as defined by 18 U.S.C. § 16, for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(F). A crime of violence is defined as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In order to determine whether the extortionate extension of credit qualifies as a "crime of violence" under 18 U.S.C. § 16, "the statute directs our focus to the 'offense' of conviction[,] . . . [which] requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to

4

petitioner's crime." Leocal v. Ashcroft, 543 U.S. 1, 7, 125 S.Ct. 377, 381 (2004); see also Hernandez, 513 F.3d at 1339. If the statutory language encompasses some offenses that would constitute aggravated felonies and others that would not, the statute is "divisible." See Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1354 (11th Cir. 2005). In order to determine whether a conviction or guilty plea under a divisible statute constitutes an aggravated felony, the Board should apply the modified categorical approach by looking to "the record of conviction," which "includes the charging document, plea, verdict or judgment, and sentence." Id. at 1355.

According to 18 U.S.C. § 892(a), "[w]hoever makes any extortionate extension of credit, or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 892(a). An "extortionate extension of credit" is defined as:

> any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person.

18 U.S.C. § 891(6). Section 892(a) encompasses offenses that would qualify as crimes of violence under 18 U.S.C. § 16 because it criminalizes the extension of extortionate loans where there is an understanding that failure to make repayment "could result in the use of violence . . . to cause harm to the person . . . or property

5

of any person." 18 U.S.C. § 891(6). We agree with Accardo, however, that the statute also covers offenses that do not constitute crimes of violence under either § 16(a) or § 16(b).

A.

Beginning with § 16(a), the question is whether the "use, attempted use, or threatened use of physical force against the person or property of another" is an element of the extortionate extension of credit. Our inquiry begins with the plain language of the statute. See Harris v. Garner, 216 F.3d 970, 972–73 (11th Cir. 2000) (en banc). Section 891(6) provides that one engages in the extortionate extension of credit if there is an understanding between both parties "that delay in making repayment or failure to make repayment could result in the use of . . . other criminal means to cause harm to the . . . reputation . . . of any person." 18 U.S.C. § 891(6) (emphasis added). The potential that a debtor could suffer harm to her reputation as a result of failing to repay an extortionate loan is, therefore, a "realistic probability, not a theoretical possibility." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 822 (2007). For example, a person could commit the offense by extending a usurious loan with the understanding that he would release embarassing photographs to the local newspaper if payments were tendered late or not at all. An interpretation that included the attempted, threatened, or actual use of physical force as an element of § 892(a) in every case

6

would render the word "reputation" superfluous, which would of course violate the well-established rule of statutory construction that we must give effect to every word of a statute when possible.  See Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 2125 (2001).

Despite Congress' inclusion of  "other criminal means" and the possibility of injury to reputation in the language of the statute, other courts have interpreted § 891(6) to require violence, the threat of violence, or something akin to violence. See United States v. Madori, 419 F.3d 159, 167 (2d Cir. 2005) ("Proving that both parties knew at the time that the loan was 'extortionate' requires the government to establish that [the victim] understood that a threat of violence existed."); United States v. Allen, 127 F.3d 260, 266 (2d Cir. 1997) ("Crucial to conviction under this statute is proof that both the creditor and the debtor understood when the loan was made that force could be used to collect the loan at issue."); United States v. Spillone, 879 F.2d 514, 526 (9th Cir. 1989) ("It is the mutual understanding of the parties to the transaction that failure to repay could lead to violence . . . that the statute requires."); United States v. Pacione, 738 F.2d 567, 572 (2d Cir. 1984) ("[T]he term 'other criminal means' was meant to supplement the context of 'violence' so as to punish those who forced their non-paying victims into committing crimes.").

On one occasion, this Court has made a statement consistent with those

7

decisions from other circuits.  Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir. 1989) ("Because neither the conduct here alleged nor that in Pacione involved anything akin to violent collection means, neither falls within the ambit of the Extortionate Credit Transaction Act.")  In Suris we held that the creation of false loan documents that were backed by an implied threat of perjury failed to constitute a predicate violation of § 892 for a civil RICO claim.  Id. at 1405.  The reference to Pacione and "violent collection means" relied on by the Board, however, is dicta.  We first observed in Suris that the plaintiff did not even suggest that the defendants committed or threatened to commit perjury.  Instead, Suris' "'extortion' assertion rest[ed] on a dual speculation (that defendants would sue on the notes and would then commit perjury in court)."  Id.  From that, we concluded "that such testimonial and documentary evidence, accepted and given the benefit of all reasonable inferences, shows at most contractual facts that cannot be reasonably construed as a threat of perjury."  Id.  Without even an allegation that the defendants threatened perjury, there could be no predicate violation of § 892(a), even by "other criminal means."  As a result, any statement or implication in Suris that § 892 requires something "akin to violent collection means" is dicta; that decision did not hold that violence was required to violate § 892.

Likewise, the decisions from other circuits construing the phrase "other

8

criminal means" have not involved potential harm to a debtor's reputation as a consequence of noncompliance; while they have held that violence or the threat of violence is enough to violate § 892(a), they have not held that it cannot be violated by a non-violent threat to damage reputation. See Madori, 419 F.3d at 167 (holding that "a debtor's belief that a creditor is connected to organized crime may be introduced since it evidences the debtor's understanding that a threat of violence exists"); Allen, 127 F.3d at 266 (holding that a creditor's recounting of a single previous instance in which he resorted to violence to collect on an extortionate loan was insufficient to support a conviction under § 892, particularly when the defendant secured sufficient collateral for the loan at issue); Spillone, 879 F.2d at 526 (explaining that under § 892(a) a mutual understanding that violence may result is enough, even without an actual fear of violence); Pacione, 738 F.2d at 572 (holding that § 892(a) did not criminalize the recording of a falsified mortgage as penalty for failure to repay an extortionate loan because Congress did not intend the phrase "other criminal means" to mean "any criminal means").

Nevertheless, in this case the Board concluded that § 892(a) was categorically a crime of violence under § 16(a) because it always involves the use, attempted use, or threatened use of physical force against the person or property of another as an element of the offense. But the decisions interpreting the use of "other criminal means" cited by the Board do not stand for the proposition that one

cannot violate § 892(a) without the attempted, threatened, or actual use of violence. Even the Second Circuit's Pacione, the progenitor of the line of cases interpreting "other criminal means" to require something "akin to violence," did not go so far as to read out of the statute the possibility that a creditor and debtor could mutually understand that failure to repay a loan could result in non-violent, yet criminal, harm to the debtor's reputation. In fact, the Second Circuit explicitly indicated that its analysis did not "attempt to ascertain the precise limits of the statute." Pacione, 738 F.2d at 572. The fact that the defendant did not resort to or threaten the use of "extra-legal methods" in encouraging his debtor to repay the loan on time was enough for the Second Circuit to uphold the district court's dismissal of the indictment in that case. Id. (citing United States v. Natale, 526 F.2d 1160, 1165 (2d Cir. 1975)).

As the court in Pacione explained, "[a]bsent threats of violence or other extra-legal methods to enforce such loans, Congress did not intend to add the federal proscriptions of the extortionate credit transactions statute to those already existing at the state level." Id. at 573 (emphasis added); see also id. at 571–72 ("[C]ongress was concerned primarily with the use of actual and threatened violence by members of organized crime engaged in loan sharking . . . .") (emphasis added). Thus, despite the seemingly broad brush courts have used to paint their interpretations of § 892(a), it is possible to violate that statutory

10

provision by an understanding that failure to comply with the terms of an extortionate loan could result in harm to the reputation of the debtor through non-violent but still extra-legal means. Accordingly, § 892(a) is not categorically a crime of violence under § 16(a) because a person may commit the offense even without the attempted, threatened, or actual use of physical force against the person or property of another.

B.

The Board concluded that even if § 892(a) were not categorically a crime of violence under § 16(a), it was one under § 16(b). We disagree. Section 16(b) further defines a "crime of violence" to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). According to the Supreme Court, § 16(b) sweeps more broadly than § 16(a) and covers "offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." Leocal v. Ashcroft, 543 U.S. at 10, 125 S.Ct. at 382–83. While § 16(b) is broader than § 16(a), the use of physical force or the substantial risk that physical force will be used is required in both subsections. Id. at 11, 125 S.Ct. at 383. "The reckless disregard in § 16 relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that

11

the use of physical force against another might be required in committing a crime." Id. at 10, 125 S.Ct. at 383 (emphasis omitted).

Section 892(a) is not categorically a crime of violence under § 16(b) because it does not invariably "by its nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b) (emphasis added). An extension of credit is extortionate, and thereby a violation of § 892(a), when a loan is extended with an understanding between the creditor and debtor that failure to repay it could result in harm to the debtor's person, property, or reputation through violence or other criminal means. Every violation of the subsection does not involve the risk that the use of physical force against another will be required.

### III.

"Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context." I.N.S. v. Orlando Ventura, 537 U.S. 12, 16–17, 123 S.Ct. 353, 355 (2002). Because the Board erred in finding that § 892(a) was categorically a crime of violence, we remand so that the Board may apply the modified categorical approach in the first instance. Under the modified categorical approach, the Board "may determine which statutory phrase was the basis for the conviction by consulting a narrow universe of

12

'Shepard documents' that includes any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." United States v. Palomino Garcia, 606 F.3d 1317, 1337 (11th Cir. 2010). Having not made an inquiry using the modified categorical approach in this case ourselves, we imply no view about what the result of one should be.

Accordingly, we GRANT the petition and REMAND this case to the BIA in order for it to determine, using the modified categorical approach, whether Accardo's conviction under § 892(a) qualifies as a crime of violence and is therefore an aggravated felony.[1]

---

[1]This case was decided without oral argument pursuant to 11th Cir. R. 34-3(f).