[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11492

_____

Agency No. A047-117-482

TREVARDO DERMONT DIXON,
a.k.a. Trevardo Darmonda Dixon,
a.k.a. Trevardo Darmont Dixon,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 1, 2014)

Before WILSON, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

WILSON, Circuit Judge:

Trevardo Dixon petitions for review of the dismissal, by the Board of

Immigration Appeals (BIA), of his appeal from the Immigration Judge's (IJ) order

of removal under 8 U.S.C. § 1227(a)(2)(A)(iii), which renders deportable "[a]ny alien who is convicted of an aggravated felony at any time after admission."  An aggravated felony is defined as "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F).  On appeal, Dixon contends that his Florida state conviction for aggravated fleeing, Fla. Stat. § 316.1935(4)(a), was not an aggravated felony.  He argues (1) that the sentence of five years' imprisonment, which the Florida court imposed after he violated his probation for his aggravated fleeing violation, was for the probation violation rather than the original offense and, therefore, cannot count as his sentence in order to satisfy the aggravated felony definition; and (2) that aggravated fleeing is not categorically a crime of violence under 18 U.S.C. § 16(b) because it does not involve a substantial risk that intentional violent force will be used in the commission of the offense.  We address Dixon's arguments in turn.  The BIA reached the correct conclusion regarding both the sentence and the § 16(b) question.  We accordingly deny the petition.

## I.

We review questions of law de novo, including whether a conviction is an aggravated felony.  *Accardo v. U.S. Att'y Gen.*, 634 F.3d 1333, 1335 (11th Cir. 2011).  In considering a petition for review, we look to the decision of the BIA, unless the BIA expressly adopts the IJ's opinion or reasoning.  *Cole v. U.S. Att'y*

2

*Gen.*, 712 F.3d 517, 523 (11th Cir.), *cert. denied*, 134 S. Ct. 158 (2013).  Because the BIA agreed with the IJ's reasoning on the crime of violence issue, we review both decisions on that issue.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

## II.

We first address Dixon's claim that his five-year sentence could not be counted as his sentence for his aggravated fleeing conviction in order to classify it as an aggravated felony because it was imposed for the probation violation rather than for the original offense.  To be characterized as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), an offense must result in a sentence of imprisonment for one year or more.  Dixon cites Florida law that he claims supports his argument that revocation of a sentence of probation, which results in a term of imprisonment, is a sentence for a probation violation, not for the underlying crime that produced the original sentence of probation.  *See Sanders v. State*, 35 So. 3d 864 (Fla. 2010); *Roberts v. State*, 644 So. 2d 81 (Fla. 1994) (per curiam); *Gearhart v. State*, 885 So. 2d 415 (Fla. Dist. Ct. App. 2004).  Therefore, according to Dixon, there was no term of imprisonment imposed, leaving that component of the definition of an aggravated felony unmet.

The precedent Dixon cites seemingly indicates that re-sentencing after a probation violation is for the probation violation and not the underlying offense.

3

*See, e.g.*, *Roberts*, 644 So. 2d at 82 ("[T]he defendant is not being sentenced for precisely the same conduct, and double jeopardy concerns do not come into play." (internal quotation marks omitted)).  Nonetheless, Florida law clearly holds that the sentence imposed after a probation violation is for the original, underlying offense.  *See Peters v. State*, 984 So. 2d 1227, 1239 (Fla. 2008) ("[T]his Court and others have characterized probation revocation hearings as deferred sentencing proceedings.  Florida law explicitly reflects this characterization: if probation or community control is revoked, the court is required to adjudge the probationer or offender guilty of the offense charged and proven or admitted, unless the probationer or offender has been previously adjudged guilty of the offense, and impose any sentence which it might have originally imposed before placing the defendant on probation or into community control." (citations omitted)).

The conduct of the proceedings here reflects this legal reality.  When Dixon was charged with aggravated fleeing, adjudication of guilt was stayed.  After Dixon was charged with second-degree murder, at the revocation hearing, Dixon entered a plea of guilty to the underlying offenses, including aggravated fleeing, and the judge ordered "that [Dixon] is hereby ADJUDICATED GUILTY of the above crime(s)," referencing the underlying offenses.  This follows the procedure contemplated in *Peters*: "if probation or community control is revoked, the court is required to adjudge the probationer or offender guilty of the offense charged and

4

proven or admitted." 984 So. 2d at 1239. Therefore, under relevant Florida law and considering the factual circumstances of the proceedings related to Dixon's aggravated fleeing offense, the probation revocation and re-sentencing resulted in a prison term of at least one year, in satisfaction of §1101(a)(43)(F).

## III.

Dixon next argues that his Florida state conviction is not a crime of violence as defined in § 16, a prerequisite for finding that the offense is an aggravated felony under § 1227(a)(2)(A)(iii). According to § 16(a), a crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). Section 16(b) adds "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The government alleges only that the § 16(b) definition is met.

"To determine whether a state law offense qualifies as a crime of violence for immigration purposes, we employ a categorical approach, looking to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Cole*, 712 F.3d at 527 (internal quotation marks omitted). "[W]e are bound by the state supreme court's interpretation of

state law, including its determination of the elements of a crime." *Id*. (internal quotation marks omitted).

> Florida's aggravated fleeing statute states that:
>
> Any person who, in the course of unlawfully leaving or attempting to leave the scene of a crash . . . having knowledge of an order to stop by a duly authorized law enforcement officer, willfully refuses or fails to stop in compliance with such an order, or having stopped in knowing compliance with such order, willfully flees in an attempt to elude such officer and, as a result of such fleeing or eluding:
>
> (a) Causes injury to another person or causes damage to any property belonging to another person, commits aggravated fleeing or eluding . . . .

Fla. Stat. § 316.1935(4)(a). The Florida Supreme Court, in drafting standard jury instructions, has determined that it is an element of the offense that the defendant either "willfully refused or failed to stop his . . . vehicle in compliance with the order to stop" or "willfully fled in a vehicle in an attempt to elude the law enforcement officer." *In re Standard Jury Instructions in Criminal Cases—Report No. 2007-03*, 976 So. 2d 1081, 1094 (Fla. 2008) (per curiam).

## A.

We have not addressed whether a violation of Florida's aggravated fleeing statute qualifies as a crime of violence under § 16(b). *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377 (2004), provides the framework for considering whether an offense is a crime of violence under § 16. In that opinion, the Supreme Court applied § 16 to a violation of Florida's driving under the influence (DUI) statute,

Fla. Stat. § 316.193(3)(c)(2). *See id.* at 4, 125 S. Ct. at 379. The Florida DUI statute "makes it a third-degree felony for a person to operate a vehicle while under the influence and, 'by reason of such operation, cause serious bodily injury to another.'" *Id.* at 7, 125 S. Ct. at 381 (quoting Fla. Stat. § 316.193(3)(c)(2)). "[I]t requires proof of causation of injury, [but] not . . . proof of any particular mental state." *Id.* The Supreme Court granted certiorari to determine "whether state DUI offenses similar to the one in Florida, which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence." *Id.* at 6, 125 S. Ct. at 380. The Court answered that question in the negative.

The Court first analyzed whether the DUI statute fell within § 16(a)'s parameters. *Id.* at 8–10, 125 S. Ct. at 382. It focused on § 16(a)'s inclusion of the word "use." *Id.* The Court stated that, in context, "'use' requires active employment" and rejected the proposition that it could encompass the accidental use of physical force, such as "stumbling and falling into" another person. *Id.* at 9, 125 S. Ct. at 382 ("While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident."). Thus, § 16(a)'s requirement that physical force be *used* cannot embrace an offense that prohibits negligent or accidental application of physical force. Section 316.193(3)(c)(2) therefore did not

7

qualify as a crime of violence under § 16(a) because even negligent or accidental conduct in causing the accident qualified to render someone culpable of aggravated DUI under that statute.  *Id.* at 9–10, 125 S. Ct. at 382.

The Court then turned to § 16(b), the subsection at issue here, and decided that the DUI offense was not a crime of violence under that definition, either.  *Id.* at 10, 125 S. Ct. at 382.  Immediately after noting that § "16(b) sweeps more broadly than § 16(a)," the Court rejected the notion that § 16(b) might "encompass all negligent misconduct, such as the negligent operation of a vehicle."  *Id.* at 10–11, 125 S. Ct. at 382–83 ("[W]e must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense.").  "[Section 16(b)] simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *Id.* at 10, 125 S. Ct. at 383.  Thus, the risk § 16(b) contemplates is "the risk that the use of physical force against another might be required in committing a crime."  *Id.*

In other words, § 16(b)'s "substantial risk" language "relates to the use of force, not to the possible effect of a person's conduct.  The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may 'use' physical force against another in committing the DUI offense."  *Id.* at 10 n.7, 125 S. Ct. at 383 n.7 (citations

8

omitted).  Therefore, the increased likelihood of force being applied to third parties is not sufficient to trigger § 16(b); there must be an augmentation of the risk that the *offender* will actively employ physical force against a third party or the third party's property in committing the offense.

## B.

The issue to resolve with respect to section 316.1935(4)(a), then, is whether it is an "offense[] that naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense."  *See id.* at 10, 125 S. Ct. at 383.  The use of physical force cannot be merely accidental, negligent, or even reckless.  *See United States v. Palomino Garcia*, 606 F.3d 1317, 1336 (11th Cir. 2010);[1] *see also Leocal*, 543 U.S. at 13, 125 S. Ct. at 384 (expressly leaving the question of whether the reckless application of force to another satisfies § 16's use requirement).  "The classic example is burglary . . . *not* because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime."

---

[1] *Palomino* is not binding on the § 16(b) question because § 16 was not at issue there. However, it holds substantial sway because (1) the language in U.S.S.G.§ § 2L1.2, which was at issue there, was identical to that in § 16(a); (2) it analyzed and used as a comparison the language in § 16(a), relying on *Leocal*; and (3) the recklessness ruling applies to the construction of the phrase "use of physical force," which is the operative element in § 16(b) at issue here, even if it is phrased differently.  *See id.* at 1334–36; *see also Leocal*, 543 U.S. at 11, 125 S. Ct. at 383 ("[W]e must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense.").

9

*Leocal*, 543 U.S. at 10, 125 S. Ct. at 383.  Applying the reasoning found in *Leocal*, we have found crimes of violence under § 16(b) where the offense was pointing or presenting a firearm at another, *see Cole*, 712 F.3d at 528, and attempting to damage or disable an aircraft, *see United States v. McGuire*, 706 F.3d 1333, 1338 (11th Cir. 2013), but not where the offense was an extortionate extension of credit, *see Accardo*, 634 F.3d at 1339.  Also applying *Leocal*'s reasoning, we have found that a definition mirroring that in § 16(b) was not met where the offense was being a felon in possession of a firearm.  *See United States v. Johnson*, 399 F.3d 1297, 1301–02 (11th Cir. 2005) (per curiam).

The offense here is very similar to that at issue in *Leocal*.  Both involve unlawful operation of a motor vehicle that ultimately causes injury.  Neither associates any *mens rea* with the conduct that causes the injury, though both require intent to commit the conduct that triggers an offense.[2]  Fleeing from police may involve circumstances not present when someone gets behind the wheel after having too much to drink, however.  Someone actively fleeing might be more desperate and is likelier to drive in an exceedingly reckless manner that can cause injury to others or to their property.  Nevertheless, even assuming that fleeing from

---

[2] The DUI statute does not expressly mention this, but Florida law recognizes involuntary intoxication as a defense to DUI in order to satisfy the requirement that "intent or knowledge is a prerequisite whenever offenses carry substantial criminal sanctions, regardless of how criminal statutes are worded."  *Carter v. State*, 710 So. 2d 110, 113 (Fla. Dist. Ct. App. 1998).

the police is per se reckless, causing injury through reckless conduct is not sufficient to satisfy § 16(b).  *See Palomino*, 606 F.3d at 1336.

Still, fleeing from police indicates that the individual fleeing is desperate. *See Sykes v. United States*, 564 U.S. __, __, 131 S. Ct. 2267, 2273 (2011) ("The felon's conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide.").  A desperate person is likelier to resort to physical force to complete the objective of fleeing from police, which is evading arrest and prosecution.  *See id.* ("When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense.").  That is what separates it from other, non-violent crimes, including DUI offenses.  While any crime runs the risk of "provo[cation of] the sort of confrontation that leads to the intentional use of physical force," *Cole*, 712 F.3d at 528, due to the fact that, upon detection, law enforcement will confront the offender, fleeing is unique in that it indicates that there is a "substantial risk" that the offender will use physical force.  There is a great likelihood "that the use of physical force against another might be required in committing" the offense, *Leocal*, 543 U.S. at 10, 125 S. Ct. at 383, because an individual who disregards an officer's order is substantially more likely to use physical force against an officer—and perhaps, civilian bystanders—when the

11

officer attempts to halt the flight, *see United States v. Sanchez-Ledezma*, 630 F.3d 447, 450–51 (5th Cir. 2011).

Of course, we do not think that any increase in the likelihood of physical confrontation is sufficient to trigger § 16(b).  If that were our standard, all felonies would be crimes of violence because any time an individual violates the law, he chances an encounter with law enforcement that may cause that individual to resort to the use of physical force.  Clearly, though, by fleeing from law enforcement, an individual has already resorted to an extreme measure to avoid arrest, signaling that he is likely prepared to resort to the use of physical force.

## IV.

Consequently, the BIA correctly held that Dixon committed an aggravated felony and thus was deportable under § 1227(a)(2)(A)(iii).

**PETITION DENIED.**