[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12750
Non-Argument Calendar

_____

Agency No. A078-201-679

IKWAZEMA ERIC ABAKPORO,
a.k.a. Ifeanyichukwu Eric Abakporo,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 13, 2021)

Before MARTIN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Ikwazema Eric Abakporo, proceeding pro se, petitions for review of the Board of Immigration Appeals' order denying his motion to reopen or reconsider and reissuing its dismissal of his appeal of the immigration judge's final order of removal. The immigration judge found Abakporo ineligible for cancellation of removal because he had been convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). After careful consideration, we dismiss Abakporo's petition for lack of jurisdiction as to the Board's dismissal of his appeal and deny it as to the denial of his motion to reopen or reconsider.

I.

Abakporo, a native and citizen of Nigeria, was admitted to the United States on a visitor's visa in 1996 and adjusted his status to lawful permanent resident in 2002. In 2014, he was convicted in federal court of conspiracies to commit bank and wire fraud, in addition to substantive bank fraud, and aiding and abetting that offense. In its judgment, the district court ordered Abakporo to pay $2,420,917.64 in restitution, including $36,521.02 to victim JP Morgan Chase Bank N.A., the successor to Washington Mutual N.A. The judgment noted three additional victims with amounts listed for the remaining restitution, but the words "relevant conduct" were handwritten next to those amounts.

In 2018, the Department of Homeland Security initiated removal proceedings against Abakporo by filing a notice to appear, charging him as

2

removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, defined as (1) an attempt or conspiracy to commit a fraud or deceit in which the loss to the victims exceeded $10,000, under 8 U.S.C. § 1101(a)(43)(U); and (2) a fraud or deceit in which the loss to the victims exceeded $10,000, under 8 U.S.C. § 1101(a)(43)(M)(i). Abakporo admitted the factual allegations in the notice to appear but argued that his conviction was not an aggravated felony and that he was therefore eligible for cancellation of removal and adjustment of status.

Abakporo then moved to terminate his removal proceedings, arguing that the restitution order in his criminal case was based on uncharged and unadmitted-to conduct that was only proved by a preponderance of the evidence. He argued that the victims did not suffer any actual loss because the fraudulent loans at issue were fully repaid, that Washington Mutual actually profited by $6,000, and that the restitution order was based on relevant conduct, so the Department of Homeland Security had not proven by clear and convincing evidence that he had been convicted of an aggravated felony as defined under § 1101(a)(43)(M)(i). Abakporo attached to his motion a document titled "satisfaction of mortgage," which indicated that Chase Bank purchased one of the loans at issue as receiver for Washington Mutual, and the loan was thereafter assigned to another institution, but did not indicate whether Chase Bank recouped any of its losses when it assigned

3

the loan.  He also attached copies of payments made on the loan after Chase Bank

accelerated it, a worksheet he created explaining what he perceived as the district

court's erroneous loss amount calculation at his criminal sentencing proceeding,

and an excerpt of his sentencing transcript where the parties argued the loss

calculation.

An immigration judge advised Abakporo that if he found Abakporo had

been convicted of an aggravated felony, Abakporo would not be eligible for

cancellation of removal, and that he should apply for any other relief he wished to

seek immediately.  The immigration judge also told Abakporo that, depending on

the resolution of the motion to terminate, he might order Abakporo's removal

before the next scheduled hearing.  After the government responded to Abakporo's

motion to terminate, Abakporo filed two replies, one counseled and one pro se,

arguing in both that the Department of Homeland Security had not carried its

burden of showing by clear and convincing evidence that the alleged victims of his

crime had incurred more than a $10,000 loss, because it had not presented any

evidence.  He also reiterated that the district court had incorrectly calculated a

$36,000 loss to Washington Mutual and Chase Bank at his sentencing.  He argued

that, even if the district court's finding of actual loss was clear from the record, the

agency was not tied to the district court's erroneous actual loss calculation and was

required to make its own determination of whether his crime resulted in a loss of

more than $10,000 to a victim, including a consideration of the evidence he submitted. Notably, an exhibit list Abakporo provided in anticipation of a hearing did not include exhibits or proposed witnesses that were relevant to the loss amount determination.

Without holding a hearing, the immigration judge issued a written decision sustaining the charge of removability, denying the motion to terminate and application for cancellation of removal, and ordering Abakporo removed to Nigeria, after noting that he had considered the entire record and all of the evidence. In so ruling, the immigration judge noted the Department of Homeland Security's burden and found that the restitution order indicated a $36,521.02 loss to successor Chase Bank, which was corroborated by the sentencing transcript, and which was based on conduct that Abakporo was charged for and convicted of.

Abakporo appealed to the Board of Immigration Appeals. The Board dismissed Abakporo's appeal, finding no error in the immigration judge's conclusion that the loss associated with his convictions was more than $10,000 and, thus, that he had been convicted of an aggravated felony. The Board explained that the Department of Homeland Security need only prove that the potential loss to a victim was more than $10,000, and was not required to show instead, as Abakporo had contended, that the actual loss exceeded that amount. Nonetheless, the Board concluded, the district court found at sentencing an excess

of $36,000 in actual loss to Chase Bank, and the immigration judge had not erred

by considering the sentencing material Abakporo submitted in making its loss

determination.  In addition, the Board concluded that the restitution ordered to

Chase Bank was tied to the conduct Abakporo was convicted of and was distinct

from the other restitution amounts, which were noted as tied to relevant conduct.

Finally, the Board explained that any difficulty the district court had in calculating

the loss amount did not obviate the district court's loss findings as reflected in the

sentencing transcript and restitution order.

Abakporo then filed a pro se petition for review in our Court, which we

dismissed sua sponte as untimely.  Abakporo filed a motion to reopen and

reconsider with the Board, arguing that his counsel had prevented him from timely

filing an appeal with our Court by failing to inform him of the Board's decision

dismissing his appeal, failed to argue that the immigration judge erred by not

holding a hearing before ordering his removal, and failed to file replies to the

government's response to his motion to terminate.  He further argued that his

counsel was ineffective for failing to inform the immigration judge or the Board

that he was eligible for a waiver of inadmissibility or that his wife had filed an I-

130 petition for an alien relative on his behalf.  He also challenged the Board's

dismissal of his appeal, arguing again that the Department of Homeland Security

had failed to present any evidence on the loss amount issue and that the Board

6

should have remanded and ordered the immigration judge to hold a hearing instead of addressing the issue of potential loss.  Abakporo later filed an addendum to his motion, asserting that an I-130 petition filed by his wife had been approved, with the dates of the petition indicating it had been filed after the immigration judge's order and approved after the filing of his motion to reconsider and reopen.

The Board denied the motion but reissued its earlier decision dismissing Abakporo's appeal.  The Board found no error in its prior decision that warranted reconsideration and concluded that Abakporo's motion to reopen did not establish prima facia eligibility for adjustment of status because he did not attach either an application for adjustment of status or for a waiver of inadmissibility, which he was required to submit simultaneously since his aggravated felony conviction rendered him inadmissible.  In addition, the Board found that Abakporo had not demonstrated prima facie eligibility for a waiver of inadmissibility because he had not alleged that his wife or two children would suffer extreme hardship if he were removed.

As to his ineffective assistance claims, the Board first found that counsel was not ineffective for failing to pursue a waiver of inadmissibility since, at the time of his removal proceedings, Abakporo was not the beneficiary of an approved visa petition and, since he could not seek a standalone waiver of inadmissibility, he was ineligible for adjustment of status with or without a waiver.  Further, the

Board concluded that counsel was not ineffective for failing either to request a hearing or object to the lack of one because, as the issues regarding Abakporo's removal rested on purely legal grounds, the immigration judge was not required to hold a hearing. And, the Board found, because the immigration judge properly found Abakporo ineligible for cancellation of removal due to his aggravated felony conviction, the lack of a hearing was not prejudicial. Finally, the Board found that Abakporo was not prejudiced by counsel's failure to timely inform him of its earlier decision since it denied his request for reconsideration on the merits and reissued its earlier decision to allow him another chance to appeal. The Board therefore denied Abakporo's motion to reopen, and this petition for review followed.

II.

Our jurisdiction to review orders of removal is limited by the Immigration and Nationality Act, which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § 1227(a)(2)(A)(iii)]." 8 U.S.C. § 1252(a)(2)(C). Nevertheless, the question of whether a petitioner's conviction constitutes an "aggravated felony" within the meaning of the INA is a question of law that falls within our jurisdiction. *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1360 (11th Cir. 2005). We must determine whether a petitioner is "(1) an alien;

(2) who is removable; (3) based on having committed a disqualifying offense." *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1283 (11th Cir. 2009) (citation omitted). If these conditions are met, we lack jurisdiction to review the removal order. *Id.* at 1283–84.

We review the Board's decision as the final order of removal and review the immigration judge's decision to the extent the Board relied on it. *Yu Xia v. U.S. Att'y Gen.*, 608 F.3d 1233, 1239 (11th Cir. 2010). And we review de novo whether a prior conviction qualifies as an aggravated felony. *Accardo v. U.S. Att'y Gen.*, 634 F.3d 1333, 1335 (11th Cir. 2011). However, we review factual findings under the substantial-evidence test, under which we view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the agency's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350–51 (11th Cir. 2009). The substantial-evidence standard applies to the Board's finding that a conviction involved more than $10,000 in actual loss. *Garcia-Simisterra v. U.S. Att'y Gen.*, 984 F.3d 977, 980–81 (11th Cir. 2020). Under this highly deferential standard, we must affirm the Board's decision if it is supported by substantial evidence on the record considered as a whole. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004). That the record may support a contrary conclusion is not enough to reverse the Board's findings. *Kazemzadeh*, 577 F.3d at 1351.

III.

An alien who has been convicted of an aggravated felony is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). An offense involving fraud or deceit that results in a loss to a victim of over $10,000 is an aggravated felony. 8 U.S.C. § 1101(a)(43)(M)(i). The government bears the burden of establishing an aggravated felony by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); 8 C.F.R. § 1240.8(a). Nevertheless, when an alien concedes a point, it eliminates the government's need to develop the record to support it. *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1320 (11th Cir. 2020).

In *Nijhawan v. Holder*, the Supreme Court concluded that the $10,000 loss component in § 1101(a)(43)(M)(i) is not an element of the fraud crime but rather a factual circumstance surrounding the fraud. 557 U.S. 29, 32, 40 (2009). Accordingly, it held that a court must conduct a circumstance-specific inquiry, not a categorical one, to determine whether the amount of loss exceeded $10,000. *Id.* at 36–40. The sole purpose of the aggravated felony inquiry is to determine the nature of the prior conviction and not to relitigate the conviction. *Id.* at 42. An immigration judge may rely on district court records, including a restitution order, to make the loss determination as long as the alien had a fair opportunity to dispute the findings in those records. *Id.* at 41–43. The Court held that, because the petitioner had not presented any conflicting evidence, the petitioner's stipulation at

sentencing and the court's restitution order showing losses greater than $10,000 were clear and convincing evidence supporting the loss determination. *Id.* at 42–43.

We have held that an immigration judge was not entitled to rely solely on a restitution order to establish the loss amount for an aggravated felony when the petitioner demonstrated that the order included conduct not included in a guilty plea. *Obasohan v. U.S. Att'y Gen.*, 479 F.3d 785, 789–91 (11th Cir. 2007), *overruled on other grounds by Nijhawan*, 557 U.S. at 33, 36. We held that "the restitution order was insufficient as a matter of law," both because it referenced conduct not charged, proven, or admitted prior to sentencing and because the standard at sentencing was a lower "preponderance of the evidence" standard. *Id.* at 791. In that case, however, the government admitted that the restitution order was based on acts other than the offense of conviction. *Id*. at 789–90.

We have jurisdiction to determine whether Abakporo's offense qualifies as an aggravated felony under § 1227(a)(2)(A)(iii), which is a question we review de novo. *Accardo*, 634 F.3d at 1335. But Abakporo challenges his removability on the ground that the Department of Homeland security failed to prove that his fraud convictions resulted in a loss of more than $10,000, which is a factual finding we review for substantial evidence. *See Garcia-Simisterra*, 984 F.3d at 980–81.

11

We conclude that the immigration judge's loss determination was supported by substantial evidence. This is so because, viewing the evidence in the light most favorable to the decision, the restitution order and sentencing transcript established approximately $36,000 in actual loss to Chase Bank and Abakporo failed to provide evidence that conflicted with the district court's findings. The documents Abakporo provided—the Chase Bank statement, the mortgage satisfaction document, and payments made on the loan—did not conflict with the district court's calculation of actual loss, because they did not indicate, as Abakporo apparently contends, that Chase Bank recouped its losses on the loan. While the government had the burden to prove the amount of the loss by clear and convincing evidence, the district court's restitution order and findings at sentencing were powerful evidence of loss, especially given the lack of controverting evidence. In addition, substantial evidence supports the conclusion that the restitution owed to Chase Bank was not based on relevant conduct, as that indication on the restitution order appeared only next to the remaining restitution amounts, which were not at issue for purposes of the aggravated felony determination.

While Abakporo argues that the Department of Homeland Security failed to support the actual loss attributed to his fraud convictions because it did not present any evidence, it was not required to do so after Abakporo submitted the restitution

order and sentencing transcript excerpt to the immigration judge. *See Dos Santos*, 982 F.3d at 1320 (holding that when a petitioner concedes a point, it eliminates the Department of Homeland Security's need to develop the record to support it). Moreover, the immigration judge acknowledged that it was the Department of Homeland Security's burden to establish Abakporo's removability before finding that the restitution order and district court's finding at sentencing were clear and convincing evidence that his conviction involved a loss of more than $10,000. Finally, Abakporo failed to present or identify any conflicting evidence despite multiple opportunities to do so, even without a hearing.

Accordingly, because we conclude Abakporo is removable for having committed a disqualifying aggravated felony offense, we lack jurisdiction to review his final order of removal. *See* 8 U.S.C. § 1252(a)(2)(C)–(D); *Keungne*, 561 F.3d at 1283–84. We therefore dismiss his petition for review as to this issue.

IV.

We review the denial of a motion to reopen removal proceedings for an abuse of discretion, a standard under which we will determine only whether the Board exercised its discretion arbitrarily or capriciously. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). We also review the Board's denial of a motion for reconsideration for an abuse of discretion. *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1341 (11th Cir. 2003). "The BIA abuses its discretion when it

misapplies the law in reaching its decision," or when it fails to follow its own precedents "without providing a reasoned explanation for doing so." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013). The appellant bears a heavy burden to prove arbitrariness or capriciousness because motions to reopen in the context of removal proceedings are particularly disfavored. *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009).

A motion to reopen "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B); *Verano-Velasco v. U.S. Att'y Gen.*, 456 F.3d 1372, 1376 (11th Cir. 2006). Motions to reopen may be granted if there is new evidence that is material, was not available previously, and could not have been discovered or presented at the removal hearing. 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3); *Verano-Velasco*, 456 F.3d at 1376–77. Removal proceedings may be reopened on grounds of ineffective assistance of counsel. *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005).

Motions to reconsider must be supported by pertinent authority. *See* 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. §§ 103.5(a)(3), 1003.2(b), & 1003.23(b)(2). "[A] motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1329 (11th Cir. 2007) (citation omitted).

While individuals in civil removal proceedings are not entitled to the Sixth Amendment right to counsel, we have held that individuals who have retained counsel have a Fifth Amendment due process right to effective assistance of that counsel. *Dakane*, 399 F.3d at 1273. A meritorious motion to reopen removal proceedings based on ineffective assistance of counsel must establish that counsel's performance was deficient to the point that it impinged upon the fundamental fairness of the hearing such that the petitioner was unable to reasonably present his case. *Id.* at 1274.

To demonstrate prejudice, the petitioner must demonstrate that the performance of counsel was "so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Sow v. U.S. Att'y Gen.*, 949 F.3d 1312, 1318 (11th Cir. 2020) (citation omitted). A petitioner can establish prejudice by making a prima facie showing that he would have been eligible for the relief sought. *Dakane*, 399 F.3d at 1274–75.

While an immigrant who committed an aggravated felony after being admitted to the United States is removable, the Attorney General may, in his discretion, waive a finding of inadmissibility for an immigrant who is the spouse or parent of a United States citizen if the immigrant's denial of admission would result in extreme hardship to the qualifying relative. 8 U.S.C. § 1182(h)(1)(B). To

15

obtain a waiver of inadmissibility, an immigrant who remains in the United States must also apply for an adjustment of status. *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1176 (11th Cir. 2012); *see also Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1327, 1329 (11th Cir. 2014).

Abakporo's motion for reconsideration of the Board's dismissal of his appeal "merely republishe[d] the reasons that had failed to convince the tribunal in the first place" and gave the Board "no reason to change its mind." *See Calle*, 504 F.3d at 1329 (quotation marks omitted). For that reason, the Board did not abuse its discretion by denying it.

The Board did not abuse its discretion in denying Abakporo's motion to reopen, either, because his counsel was not ineffective for failing to apply for a waiver of inadmissibility for which Abakporo was not eligible. Specifically, Abakporo was not the beneficiary of an approved I-130 petition until after the Board dismissed his appeal, he had not filed for an adjustment of status, and he could not seek a standalone waiver of inadmissibility. *See Poveda*, 692 F.3d at 1176. And as to Abakporo's contention that his counsel was ineffective for waiving or failing to request a hearing before the immigration judge, as we explained, Abakporo never filed or identified the allegedly conflicting evidence that he says should have been considered at a hearing, despite multiple

opportunities to do so.  *See* 8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3);

*Verano-Velasco*, 456 F.3d at 1376–77.

Finally, Abakporo cannot demonstrate that he was prejudiced by any of his

counsel's purported errors.  Without the allegedly conflicting evidence, he cannot

establish a reasonable probability that, but for counsel's errors, the outcome of his

removal proceedings would have been different.  *See Sow*, 949 F.3d at 1318.

Accordingly, the Board did not abuse its discretion by denying Abakporo's

motion to reopen or reconsider, and we deny his petition as to this issue.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

17

MARTIN, Circuit Judge, concurring:

I write separately to note why I prefer not to use the term "alien," which the panel opinion uses six times. Justice Kavanaugh has equated the term "noncitizen" with the statutory term "alien." Nasrallah v. Barr, 590 U.S. __, 140 S. Ct. 1683, 1689 n.2 (2020); see also United States v. Estrada, 969 F.3d 1245, 1253 n.3 (11th Cir. 2020). "Alien" is increasingly recognized as an "archaic and dehumanizing" term. Maria Sacchetti, ICE, CBP to Stop Using 'Illegal Alien' and 'Assimilation' Under New Biden Administration Order, Wash. Post (Apr. 19, 2021), https://www.washingtonpost.com/immigration/illegal-alien-assimilation/2021/04/19/9a2f878e-9ebc-11eb-b7a8-014b14aeb9e4_story.html.

To the extent the term "noncitizen" does not, in every instance, serve as a perfect replacement for the term "alien," that concern is not present in this case. I see no need to use a term that "has become pejorative" where a non-pejorative term works perfectly well. Library of Congress, Library of Congress to Cancel the Subject Heading "Illegal Aliens" at 1 (2016), https://www.loc.gov/catdir/cpso/illegal-aliens-decision.pdf.

18

BRANCH, Circuit Judge, concurring:

In her separate concurrence, Judge Martin takes issue with the fact that the majority uses the statutory term "alien," rather than her preferred term "noncitizen." Although she declares that the term "alien" is pejorative, she does not explain how the majority opinion "intend[s] to disparage or belittle" when it uses a legal term of art Congress chose to use in the Immigration & Nationality Act. *See Pejorative*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/pejorative (last visited August 5, 2021). Nor does she explain how the Supreme Court and every circuit court of appeals have intended to disparage or belittle by their use of the appropriate statutory term "alien." *See Davis v. Gregory*, No. 20-12716, 2021 WL 2944462, at *4 (11th Cir. July 14, 2021) (Branch, J., concurring); *Jean-Louis v. U.S. Att'y Gen.*, No. 20-12082, 2021 WL 2885838, at *2 (11th Cir. July 9, 2021) (Branch, J., concurring); *Rivera v. U.S. Att'y Gen.*, No. 20-13201, 2021 WL 2836460, at *7 (11th Cir. July 8, 2021) (Branch, J., concurring).